**BEL-MAR FORD TRACTOR,**
Plaintiff-Appellant,

v.

**WOODS & COPELAND MANUFACTUR-
ING, INC., Defendant-Appellee.**

No. 79-1413
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

Sept. 19, 1979.

Alfred· A. Levingston, Cleveland, Miss.,
Ben Caldwell, Marks, Miss., for plaintiff-appellant.

Woods & Copeland Mfg., Inc., pro se.

Before BROWN, Chief Judge, KRAV-
ITCH and JOHNSON, Circuit Judges.

PER CURIAM:

This is a diversity action by Bel-Mar Ford Tractor (Bel-Mar) against Woods & Copeland Manufacturing, Inc. (W&C) for breach of an alleged exclusive franchise agreement between W&C and Bel-Mar for the sale of W&C's heavy duty tractors. Bel-Mar claimed that the agreement was breached when Taylor Machinery Works (Taylor) was given permission to sell the heavy duty tractors in certain parts of Mississippi. The case was tried before a jury. The jury awarded Bel-Mar $19,500 in damages. Subsequently, W&C moved for a judgment notwithstanding the verdict. The Trial Court sustained the motion, holding that Bel-Mar's contract with W&C was too indefinite to enforce, and that even assuming the contract was enforceable, Bel-Mar did not

---

* Rule 18, 5 Cir.; see *Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.,* 5 Cir., 1970, 431 F.2d 409, Part I.

prove that any damages were caused by the breach. We affirm.

Defendant W&C manufactured heavy duty, high powered farm tractors. When Bel-Mar first decided that it wished to obtain an exclusive franchise from W&C, Cleveland Tractor Company (Cleveland Tractor) was the only company selling W&C's heavy duty tractors in Mississippi. On October 1, 1975, at a meeting between Jones Copeland, President of W&C, Eugene Tarsi, President of Cleveland Tractor, and R. B. Carter, President and Chief Executive Officer of Bel-Mar, Copeland and Carter agreed that Bel-Mar would be given an exclusive franchise to sell the tractors in certain Mississippi counties.

The events surrounding the October 1 meeting between Copeland, Tarsi, and Carter are somewhat unclear. Copeland claimed that Carter signed an eleven page agreement stipulating that the franchise was not exclusive. Carter claimed—and the jury expressly found—that only a two-page document was signed and that the rest of the contract, although settled upon orally on October 1, was to be written later by Copeland. Carter claimed that he never received a copy of the contract.

 We need not examine the jury's findings surrounding the formation of the contract, since we agree with the Trial Court that Bel-Mar failed to demonstrate that it was damaged as a result of W&C's alleged breach. It is undisputed that on September 1, 1976, W&C terminated its relationship with Bel-Mar. Although W&C entered into a sales agreement with Taylor on June 15, 1976, Taylor did not sell any W&C heavy duty tractors between June 15 and September 1. Even assuming that W&C and Bel-Mar had an exclusive franchise contract, Bel-Mar admits that there was no termination date. As the Trial Court stated—and as Bel-Mar concedes—W&C was entitled to terminate the agreement at will by giving Bel-Mar reasonable notice. See, e.g., *P. P. Williams Co. v.*

*Colorado Milling & Elevator Co.*, 5 Cir. (Miss.), 1957, 246 F.2d 240 (applying Mississippi law). Thus Bel-Mar has no claim for lost sales resulting from W&C's breach, since Taylor made no sales prior to the time W&C terminated its agreement with Bel-Mar.

 The only evidence presented by Bel-Mar on the question of damages was testimony regarding various advertising and other promotional expenditures. Carter, President of Bel-Mar, testified that prior to June of 1976, Bel-Mar spent about $24,000 on tractor demonstrations alone (400 demonstrations at $600 each). Bel-Mar no doubt believed that such expenditures would increase future sales. Yet, as the Trial Court observed, "Bel-Mar Ford had no assurance that the dealership for [the] tractors would exist for any period of time." W&C at no time agreed to absorb Bel-Mar's advertising costs as a condition to terminating the agreement. In making its expenditures, Bel-Mar took the risk that W&C might terminate the franchise. The fact that W&C *did* terminate the agreement did not thereby give Bel-Mar the right to recoup such expenditures. To hold otherwise would be to reverse a fundamental principle of contract law that one cannot be held liable for damages he did not cause. See 5 Corbin on Contracts, §§ 1006–1019.

Thus, the Trial Court was correct in sustaining W&C's motion for judgment notwithstanding the verdict.

AFFIRMED.