591 So.2d 621 (1992)
Robert McLEOD, etc., Petitioners,
v.
CONTINENTAL INSURANCE COMPANY, Respondent.
No. 77089.
Supreme Court of Florida.
January 9, 1992.
*622 Hugh N. Smith and David S. Nelson of Smith & Fuller, P.A., Tampa, for petitioners.
Michael M. Bell of Hannah, Marsee, Beik & Voght, P.A., Orlando, for respondent.
Joel D. Eaton of Podhurst, Orseck, Josefsberg, Eaton, Meadow, Olin & Perwin, P.A., Miami, and Roy D. Wasson, Miami, amicus curiae for Academy of Florida Trial Lawyers.
Raymond T. Elligett, Jr. of Schropp, Buell & Elligett, P.A., Tampa, amicus curiae for Prudential Property and Cas. Ins. Co.
McDONALD, Justice.
We review McLeod v. Continental Insurance Co., 573 So.2d 864, 868 (Fla. 2d DCA 1990), in which the district court certified the following question as being of great public importance:
WHAT IS THE APPROPRIATE MEASURE OF DAMAGES IN A FIRST-PARTY ACTION FOR BAD FAITH FAILURE TO SETTLE AN UNINSURED MOTORIST INSURANCE CLAIM?
We have jurisdiction pursuant to article V, section 3(b)(4) of the Florida Constitution. We hold that the damages recoverable in a first-party action under section 624.155, Florida Statutes (1989), for bad faith failure *623 to settle an uninsured motorist claim are those damages which are the natural, proximate, probable, or direct consequence of the insurer's bad faith actions and approve McLeod.
Due to the death of his wife in an automobile accident, McLeod, insured by Continental with underinsured motorist coverage, filed a wrongful death suit against the party at fault in the accident. At one point, McLeod offered to settle with the tortfeasor and all of the insurance companies involved for a total of $850,000. The agreement called for Continental to pay the full amount of benefits available under its policy limits. Continental refused to pay this amount and the settlement negotiations failed. McLeod then settled with his other uninsured motorist carrier[1] for $179,900 of its $200,000 policy limits and with the tortfeasor's insurance carriers for $550,000. The wrongful death action proceeded to trial and ultimately resulted in a $1,250,000 verdict in McLeod's favor.
Continental tendered the amount of its policy limits ($300,000) to McLeod, but denied having refused to settle the suit in bad faith. McLeod then filed a first-party bad faith action pursuant to subsection 624.155(1)(b)(1), Florida Statutes (1985),[2] against Continental for failing to settle the claim. The jury found that Continental had acted in bad faith and awarded McLeod $100,000 in damages.
McLeod appealed, arguing that the trial court erred in not granting his motion for directed verdict or, in the alternative, by refusing to instruct the jury that McLeod's damages were fixed at the $200,000 shortfall between all available insurance coverage and the amount of the verdict in the wrongful death action. This amount is commonly referred to as the "excess judgment" and is an available remedy in third-party bad faith actions.[3] The Second District Court of Appeal held that the damages recoverable in a first-party bad faith claim are those damages proximately caused by the insurer's bad faith and, therefore, that the trial court had properly rejected McLeod's proposed instruction. We agree.
Under the common law, Florida courts refused to recognize a first-party bad faith cause of action. Baxter v. Royal Indem. Co., 285 So.2d 652, 656 (Fla. 1st DCA 1973), cert. discharged, 317 So.2d 725 (Fla. 1975). However, in 1982 the Florida Legislature enacted section 624.155, Florida Statutes (Supp. 1982). Ch. 82-243, § 9, Laws of Fla. Subsequent cases have held that the statute created a first-party cause of action by an insured against the insured's uninsured or underinsured motorist carrier. Opperman v. Nationwide Mut. Fire Ins. Co., 515 So.2d 263 (Fla. 5th DCA 1987), review denied, 523 So.2d 578 (Fla. 1988).
Section 624.155 does not differentiate between first- and third-party actions and calls for the recovery of damages in both instances. In general, there are two types of damages, compensatory and punitive. Tucker v. State Dept. of Professional Regulations, 521 So.2d 146, 147 (Fla. 5th DCA 1988). Subsection 624.155(4) specifically sets forth the requirements for an award of punitive damages under the statute.[4] Because the instant case does not *624 involve punitive damages under this section, we turn to the issue of compensatory damages.
This Court has defined compensatory damages as "the loss, injury or deterioration caused by negligence, design or accident of one person to another." Hanna v. Martin, 49 So.2d 585, 587 (Fla. 1950). In Hanna, this Court stated that the "fundamental principle of the law of damages is that the person injured by breach of contract or by wrongful or negligent act or omission shall have fair and just compensation commensurate with the loss sustained in consequence of the defendant's act which [gave] rise to the action." Id. See also Fisher v. City of Miami, 172 So.2d 455, 457 (Fla. 1965) ("the primary basis for an award of damages is compensation [and] the objective is to make the injured party whole"); Douglass Fertilizers & Chemical, Inc. v. McClung Landscaping, Inc., 459 So.2d 335, 336 (Fla. 5th DCA 1984) (the plaintiff is entitled to damages which are the "natural, proximate, probable or direct consequence of the act").
We agree with the district court that there are "fundamental differences" between first- and third-party actions. In a third-party action, damages based on the above definitions would include the amount of a judgment in excess of policy limits because the insured is exposed to additional liability for the excess amount. Such is not the case in a first-party action, because the insured is not injured by the excess judgment amount. To allow recovery of the excess judgment in first-party cases would be in direct conflict with the fundamental principle that one is not liable for damages that he or she did not cause. See Bel-Mar Ford Tractor v. Woods & Copeland Mfg., Inc., 602 F.2d 1199, 1200 (5th Cir.1979) (it is a "fundamental principle of contract law that one cannot be held liable for damages he did not cause"); Asgrow-Kilgore Co. v. Mulford Hickerson Corp., 301 So.2d 441, 445 (Fla. 1974) (a plaintiff must provide initial proof that the defendant's negligent act caused the damages in order to recover).
Even though the insurer's bad faith in refusing to settle a first-party action leads to an excess judgment in favor of the insured and against the third party, causing the excess judgment to occur is not enough. To be liable under the statute, Continental must not only cause the excess judgment, but the excess judgment must also injure the insured. While the amount of the excess judgment represents damage sustained by McLeod, the tortfeasor, not Continental, caused those damages. Thus, in the uninsured motorist case, the excess judgment does not qualify as damages resulting from a violation of the statute.
Further, this is the same standard of causation that has been applied in third-party cases.[5] Third-party actions do not *625 allow for the recovery of the excess judgment in cases in which the insured is not damaged by the excess liability. Fidelity & Casualty Co. v. Cope, 462 So.2d 459, 461 (Fla. 1985); see also Cheek v. Agricultural Ins. Co., 432 F.2d 1267, 1269 (5th Cir.1970) (an insured must produce evidence of a causal connection between the bad faith act of the insurer and the damage sustained). In Cope, the injured party had obtained an excess judgment against the insured tortfeasor. However, the injured party had settled a bad faith action against one of the tortfeasor's insurance companies and, in doing so, had signed a release and satisfaction of judgment with the tortfeasor. This Court held that the injured party's bad faith action against one of the tortfeasor's other insurers was derivative of the insured's action. 462 So.2d at 461. Therefore, execution of the release and the satisfaction of judgment in favor of the tortfeasor barred the suit because the tortfeasor was no longer exposed to any loss or damage from the alleged bad faith of the insurer. Id. This Court stated that Thompson[6] did not
change the basis or theory of recovery. We did not extend the duty of good faith by an insurer to its insured to a duty of an insurer to a third party. The basis for an action remained the damages of an insured from the bad faith action of the insurer which caused its insured to suffer a judgment for damages above his policy limits.
Id. Further, we specifically reaffirmed that "[a]n essential ingredient to any cause of action is damages." Id.
We recognize that the legislature has the right to modify the common law definition of damages and allow recovery for amounts not proximately caused by the insurer's bad faith. E.F. Hutton & Co., Inc. v. Rousseff, 537 So.2d 978 (Fla. 1989). However, we agree with the second district's conclusion that there is "nothing in this statute which evinces an intent on the part of the legislature to require an insurer to pay for a `loss' it did not cause." McLeod, 573 So.2d at 868. Further, arbitrarily setting the damages recoverable as the amount of the excess judgment would be analagous to imposing a penalty or punitive damages upon the insurer. We find such a conclusion inconsistent with the legislature's action in setting forth the specific requirements for an award of punitive damages under subsection 624.155(4).[7]
We also were unable to find any evidence of such intent in the legislative history of the statute. The staff report to the House Committee on Insurance states that the "sanction" for a failure to deal in good faith is that the insurer will be "subject to a judgment in excess of policy limits." Staff Report, 1982 Insurance Code Sunset Revision (HB 4F: as amended HB 10G) (June 3, 1982).[8] This statement merely indicates that the measure of damages is not limited to the policy limits, if such damages are incurred. Nowhere does the report evidence an intent that the measure of *626 damages be fixed at the excess judgment amount.
In 1990, the statute was amended and the title to chapter 90-119, which contained the amendment, specifically stated its purpose as clarifying the legislature's intent.[9] The amendment provides that the insured is entitled to reasonably foreseeable damages arising out of a violation of the statute and that damages may include an award or judgment that exceeds the policy limits. In other words, the policy limits are not to limit the amount of actual damages recoverable under the statute. While it is reasonably foreseeable that the insurer's bad faith refusal to settle will result in an excess judgment, the statute says the insured is entitled to damages which are a reasonably foreseeable result of the violation. As pointed out earlier, the insured in a first-party action is not injured as a result of the excess judgment and, thus, the excess judgment does not meet the definition of damages.
Based on the above analysis, we hold that the damages recoverable in a first-party suit under section 624.155, Florida Statutes (1989), are those amounts which are the natural, proximate, probable, or direct consequence of the insurer's bad faith actions, and we reject the contention that first-party bad faith damages should be fixed at the amount of the excess judgment. The insurer in a first-party bad faith action is subject to a judgment in excess of policy limits if the actual damages resulting from the insurer's bad faith are found to exceed the policy limits. Such damages may include, but are not limited to, interest, court costs, and reasonable attorney's fees incurred by the plaintiffs.[10] The attorney's fees recoverable shall also include any fees incurred in the original underlying action as a result of the insurer's bad faith actions. See Howard v. Crawford & Co., 384 So.2d 1326 (Fla. 1st DCA 1980); see generally 22 Am.Jur.2d Damages § 616 (1988).
We approve the district court's decision.
SHAW, C.J., and OVERTON, GRIMES and HARDING, JJ., concur.
BARKETT, J., dissents with an opinion, in which KOGAN, J., concurs.
BARKETT, Justice, dissenting.
After carefully examining section 624.155, Florida Statutes (1989), and its underlying policy, I am persuaded that the excess judgment is the relief provided by the statute. While the majority may be correct in its analysis of the difference between third-party and first-party bad-faith actions, that does not account for the most relevant portions of the legislative history or for the purpose of the statute in the first place.
The majority briefly addresses the legislative history indicating that the legislature affirmatively contemplated the recovery of an excess judgment as the plaintiff's remedy. Majority op. at 625. The staff analysis to which the majority refers specifically states that "the sanction [for bad faith] is that a company is subject to a judgment in excess of policy limits." Staff Report, 1982 Insurance Code Sunset Revision (HB 4F: as amended HB 10G (June 3, 1982) (emphasis added). Clearly this language indicates that the legislature intended to afford the plaintiff a remedy beyond that which was already available under traditional contract law. Before the enactment of section 624.155, an insurer that breached its contract with a first-party claimant, whether in good faith or in bad faith, was subject only to a common law action for breach of contract in which the insured could recover all the consequential damages caused by the breach. Thus, had the *627 legislature intended for consequential damages to be the sole remedy for the victim of an insurer's bad faith, it need not have bothered to enact section 624.155 since that remedy was already available. Clearly, the legislature intended to do more than merely compensate the plaintiff; it intended to "sanction" the company when it refused in bad faith to honor its contract.
The majority also notes that the legislature amended the statute in 1990 to specifically clarify that
[t]he damages recoverable pursuant to [section 624.155] shall include those damages which are a reasonably foreseeable result of a specified violation of this section by the insurer and may include an award or judgment in an amount that exceeds the policy limits.
Majority op. at 626 n. 9 (quoting ch. 90-119, Laws of Fla.). This language is significant for two reasons.
First, the legislature has reaffirmed its intent to provide an award in excess of policy limits. While the majority argues that the "excess" should be limited to consequential damages, that interpretation is contrary to the legislature's purpose in providing a "sanction" against insurers who act in bad faith. By defining "damages" to exclude an excess judgment, the majority has removed both the insurer's incentive to act in good faith as well as the plaintiff's incentive to seek a remedy when an insurer acts in bad faith. In many cases, it is likely that the only consequential damages suffered by the plaintiff will be the costs and attorneys' fees associated with bringing the bad-faith action. With little to gain by the litigation, it is unlikely that the plaintiff will elect to pursue its right under section 624.155. Thus, the insurance company has nothing to lose by unreasonably refusing to settle. And even if the plaintiff does bring suit against the insurer, the sanction is not so severe as to offset the risk.
Second, the express language under the amended statute, "[t]he damages recoverable pursuant to [section 624.155] shall include," demonstrates that the legislature did not intend to limit the plaintiff's recovery to damages directly resulting from the bad faith. In other words, even if the traditional definition of "damages" does not include an excess judgment in this context, the legislature has provided for an expanded recovery. This language indicates the legislature's intent both to provide for damages resulting from the bad faith and to "sanction" the company for its actions.
The majority argues that allowing the excess judgment as a remedy would usurp the punitive damages requirements as provided by section 624.155(4), Fla. Stat. (1989). Under section 624.155(4), punitive damages are recoverable in narrowly defined circumstances where the bad-faith acts constitute "a general business practice." Id. However, just because the legislature provided for additional punishment for the most egregious conduct does not mean that the legislature did not intend to sanction the insurer who acts in bad faith without reaching the level required to sustain an award under section 624.155(4). To assume otherwise would invite insurers to act in bad faith. Clearly, this is not what the legislature intended. Rather, section 624.155 merely provides a penalty in addition to the excess judgment where the conduct is extraordinarily egregious.
KOGAN, J., concurs.
NOTES
[1] McLeod, in the process of switching insurance carriers, had overlapping coverage at the time of the accident.
[2] The relevant subsection reads as follows:

(1) Any person may bring a civil action against an insurer when such person is damaged:
....
(b) By the commission of any of the following acts by the insurer:
1. Not attempting in good faith to settle claims when, under all the circumstances, it could and should have done so, had it acted fairly and honestly toward its insured and with due regard for his interests.
[3] A first-party action is one in which the insured is also the injured party who is to receive the benefits under the policy. In contrast, a third-party action is one in which a third-party injured, not the insured, is entitled to the benefits under the policy as the result of the insured's tortious conduct.
[4] § 624.155(4), Fla. Stat. (1989). The subsection reads as follows:

(4) No punitive damages shall be awarded under this section unless the acts giving rise to the violation occur with such frequency as to indicate a general business practice and these acts are:
(a) Willful, wanton, and malicious;
(b) In reckless disregard for the rights of any insured; or
(c) In reckless disregard for the rights of a beneficiary under a life insurance contract. Any person who pursues a claim under this subsection shall post in advance the costs of discovery. Such costs shall be awarded to the insurer if no punitive damages are awarded to the plaintiff.
[5] McLeod cites Shook v. Allstate Insurance Co., 498 So.2d 498 (Fla.4th DCA 1986), review denied, 508 So.2d 13 (Fla. 1987), as standing for the proposition that an insurer can be called to atone for its bad faith by paying damages caused by another. In Shook, the insurer had denied coverage to the insured. The insured then settled with the injured party, and, in return for the injured party's promise not to execute a judgment against her, the insured assigned her right of action against the insurer.

The Fourth District Court of Appeal held that, if an insurer refuses to defend an insured's claim, the insured has the right to do whatever is necessary to protect herself and the injured party's release of the insured tortfeasor does not relieve the insurer of liability for the amount of a reasonable settlement. Id. at 500. The majority in Shook merely held that the insured could assign his or her right to recover from the insurer to the third-party injured. Shook should not be interpreted as extending the damages recoverable by an insured, or the insured's assignee, beyond those amounts available under the obligations of the contract or those damages incurred by the insured as the proximate result of the insurer's refusal to defend the insured.
[6] Thompson v. Commercial Union Insurance Co., 250 So.2d 259 (Fla. 1971). In Thompson, this Court held that a judgment creditor could bring a bad faith suit directly against the tortfeasor's liability insurer for recovery of the excess judgment even though the insured had not assigned the claim to the judgment creditor. Thompson was premised on the principle that "a third party beneficiary who is not a formal party to a contract may sue for damages sustained as the result of the acts of one of the parties to the contract." Id. at 261. However, Thompson did not remove the requirement that recoverable damages be sustained by the insured as a result of the bad faith of the insurer. It merely allowed the judgment creditor to step into the shoes of the insured and bring an action without an assignment by the insured. The purpose of the suit is to remove the burden of the excess judgment from the shoulders of the insured, not to compensate the injured party for the damages arising from the underlying occurrence. Had the insured not sustained any damage as the result of the insurer's bad faith, the judgment creditor would not have had a bad faith cause of action against the insurer.
[7] See supra note 4.
[8] The pertinent portion of the staff report reads as follows:

Subparagraph (f)(1.) requires insurers to deal in good faith to settle claims. Current case law requires this standard in liability claims, but not in uninsured motorist coverage; the sanction is that a company is subject to a judgment in excess of policy limits. This section would apply to all insurance policies.
[9] Ch. 90-119, § 30, Laws of Fla. The pertinent portion of the amendment reads as follows: "The damages recoverable pursuant to this section shall include those damages which are a reasonably foreseeable result of a specified violation of this section by the insurer and may include an award or judgment in an amount that exceeds the policy limits."
[10] Nothing in this decision affects the holding in Butchikas v. Travelers Indemnity Co., 343 So.2d 816, 819 (Fla. 1976), which restricted the award of damages for mental anguish in bad faith insurer cases to instances in which the defendant acted with sufficient malice to support an award of punitive damages.