William ADAMS and Dorothy Adams, his wife, and Thomas Shelton and Elizabeth Shelton, his wife, Plaintiffs,

v.

The FIDELITY AND CASUALTY COMPANY OF NEW YORK, a New Hampshire corporation, Defendant.

No. 88–0629–CIV–HIGHSMITH.

United States District Court, S.D. Florida.

March 3, 1993.

**266**

James B. Tilghman, Jr., Stewart Tilghman Fox & Bianchi, Miami, FL, for plaintiffs.

Love Phipps, Corlett Killian, PA, Miami, FL, for defendant.

### ORDER DENYING PLAINTIFFS' MOTION FOR RELIEF FROM JUDGMENT

HIGHSMITH, District Judge.

THIS CAUSE comes before the court upon Plaintiffs William Adams, Dorothy Adams, Thomas Shelton, and Elizabeth Shelton's motion for relief from judgment. For the reasons stated below, the Court denies the motion.

### PROCEDURAL HISTORY

Thomas and Elizabeth Shelton ("the Sheltons") purchased an automobile insurance policy in their home state of North Carolina from Defendant The Fidelity and Casualty Company of New York ("F & C"). The policy provided for $200,000 in uninsured motorist coverage. In 1982, the Sheltons, along with their passengers William and Dorothy Adams ("the Adamses"), sustained injuries in an automobile accident, which was caused by a drunken uninsured motorist in Broward County, Florida. The Sheltons and the Adamses filed a claim with F & C under the uninsured motorist provision of the Sheltons' policy. F & C rejected their offers to settle within the policy limits. Thereafter, the Sheltons and the Adamses filed suit in Florida state court against the uninsured motorist and F & C.

In May of 1985, a Florida jury awarded the Sheltons and the Adamses $70,000 in compensatory damages for injuries sustained in the automobile accident, as well as $750,000 in punitive damages. F & C appealed, asserting that it was liable only for the $70,000 compensatory award. F & C argued that, under Florida law, punitive damages are not recoverable against an uninsured motorist carrier. The Third District Court of Appeals, however, determined that North Carolina law, rather than Florida law, controlled because the Sheltons were North Carolina residents who purchased their policy in North Carolina. *Adams v. Brannan*, 500 So.2d 236, 239 (3rd DCA 1986). Applying North Carolina law, the Court of Appeals concluded that the Sheltons and the Adamses were entitled to punitive damages. *Id.*

F & C paid the compensatory damage award, as well as $130,000 of the punitive damages award, thereby satisfying the policy limit. Seeking to recover the $620,000 excess damages, the Sheltons and the Adamses then filed a first-party bad faith action against F & C in Florida state court, pursuant to Fla.Stat. § 624.155. Section 624.155 provides, in pertinent part:

> Any person may bring a civil action against an insurer when such person is damaged ... by the commission of any of the following acts by the insurer: (1) not attempting in good faith to settle claims when, under all the circumstances, it could and should have done so, had it acted fairly and honestly toward its insured and with due regard for his interests.

Fla.Stat. § 624.155(1)(b)(1) (West Supp.1993). F & C removed the action to this Court on the basis of diversity jurisdiction. After removal, F & C moved for summary judgment on two alternative grounds: (1) that an excess judgment was not a recoverable element of damages under section 624.155; and (2)

that, in any event, the Sheltons and the Adamses' excess judgment was not recoverable because it represented a punitive damages award, which would not have been covered by an uninsured motorist policy under Florida law.[1]

The Honorable Eugene P. Spellman, United States District Judge, orally granted F & C's motion for summary judgment on the grounds that an excess judgment was not recoverable under § 624.155, because it represented damages proximately caused by a third-party tortfeasor, not by the insurer's bad faith. *Adams v. Fidelity and Casualty Co.*, 757 F.Supp. 1348, 1349 (S.D.Fla.1990) *vacated*, 955 F.2d 39 (11th Cir.1992). Before Judge Spellman had issued a written opinion and final judgment, however, another District Judge in the Southern District of Florida held that excess judgments were recoverable as an element of damages in a bad faith action under § 624.155. *Jones v. Continental Ins. Co.*, 716 F.Supp. 1456, 1460 (S.D.Fla. 1989) (Aronovitz, J.), *vacated*, 956 F.2d 1052 (11th Cir.1992). In light of the *Jones* decision, Judge Spellman amended his rationale for granting summary judgment to F & C's alternative grounds. In his written opinion, Judge Spellman acknowledged that other courts had found excess judgments recoverable under § 624.155. *Adams*, 757 F.Supp. at 1351. Judge Spellman found, however, that the excess judgment in this case was not recoverable because it consisted of punitive damages, which were not covered by an uninsured motorist policy under Florida law. *Id.*

The Sheltons and the Adamses appealed the summary final judgment to the Eleventh Circuit, arguing: (1) that excess judgments were a recoverable element of damages in a bad faith action under § 624.155; and (2) that such recovery applied to excess judgments consisting of punitive damages, where the damages were recoverable as a matter of law in the underlying case. While the appeal was pending, the Florida Supreme Court rendered a decision holding that the amount of an excess judgment was not a recoverable element of damages under § 624.155. *McLeod v. Continental Ins. Co.*, 591 So.2d 621, 626 (Fla.1992). The Supreme Court stated that, in a first-party bad faith action against an insurer, the insurer was not liable for damages caused by the third party tortfeasor. *Id.* The Supreme Court further stated that, while the legislature had the right to allow recovery of damages for harm not proximately caused by the insurer's bad faith, § 624.155 did not manifest such an intent. *Id.* at 625. The *McLeod* decision thus disposed of the larger issue on appeal in *Adams*.

As to the second issue, the Eleventh Circuit had certified a question to the Florida Supreme Court prior to the *McLeod* ruling. *Adams v. Fidelity and Casualty Co.*, 920 F.2d 897 (11th Cir.1991). In light of the *McLeod* decision, the Florida Supreme Court declined to answer this second question and sent the matter back to the Eleventh Circuit. *Adams v. Fidelity and Casualty Co.*, 591 So.2d 929 (Fla.1992). Thereafter the Eleventh Circuit vacated the summary final judgment and remanded the case "for reconsideration in light of the Florida Supreme Court's decisions in *McLeod* and *Adams*." *Adams v. Fidelity and Casualty Co.*, 955 F.2d 39, 39 (11th Cir.1992).[2]

Upon remand, the parties submitted a joint stipulation stating that, because the Florida Supreme Court had held that the damages sought by the plaintiffs were unrecoverable, final judgment should be entered in favor of F & C. (Stipulation for Disposition of Action, D.E. # 46). Pursuant to the parties' stipulation, the Court entered final judgment in favor of F & C on May 13, 1992.

## POST–JUDGMENT LEGISLATION

On June 25, 1992, the Florida Legislature passed Chapter 92–318, § 79, Laws of Florida, which added § 627.727(10) to the Florida Statutes. Section 627.727(10) explicitly provides that a § 624.155 bad faith action for

---

1. As noted above, the punitive damages claim survived F & C's challenge in the first state action because the court applied North Carolina law.

2. Reconsideration in light of *McLeod* and *Adams* would have resulted in the reinstatement of the grounds first contemplated by Judge Spellman for granting summary final judgment in favor of F & C.

damages includes the damages caused by a third-party tortfeasor, as well as the damages caused by the insurer's bad faith. "The total amount of claimant's damages are recoverable whether caused by an insurer or by a third party tortfeasor." Fla.Stat. § 627.727(10) (West Supp.1993). The Legislature stated that the purpose of § 627.727(10), as it related to damages, was to "reaffirm existing legislative intent, and as such is remedial rather than substantive." Fla.Stat. § 627.727 (Historical and Statutory Notes) (West Supp.1993). Accordingly, the Legislature provided that "§ 627.727(10) shall apply to all causes of action accruing after the effective date of section 624.155, Florida Statutes." *Id.* It is this change in Florida law that has prompted the plaintiffs' motion for relief from judgment.

## STANDARD FOR GRANTING RELIEF FROM FINAL JUDGMENT

Rule 60 of the Federal Rules of Civil Procedure addresses relief from judgment. Specifically, Rule 60(b)(1) allows relief from judgment for "mistake" if the motion is made within a year of judgment; and Rule 60(b)(6) allows relief for "any other reason justifying relief," if the motion is made "within a reasonable time."

■ Rule 60(b) permits reopening of judgments only rarely. Rule 60(b) "is an extraordinary remedy ... which may be invoked only upon a showing of exceptional circumstances." *Tucker v. Commonwealth Land Title Ins. Co.*, 800 F.2d 1054, 1056 (11th Cir.1986) (citing *Griffin v. Swim–Tech Corp.*, 722 F.2d 677, 680 (11th Cir.1984)). Judgments are reopened only under exceptional circumstances because of the federal courts' great concern that "final judgments should be truly final." *United States v. Boch Oldsmobile, Inc.*, 909 F.2d 657, 660 (1st Cir.1990). "The principle of finality is essential to ensure consistency and certainty in the law." *Id.*

■ Although relief from final judgment is left to the court's discretion, there is a need for caution in reopening judgments. *Fackelman v. Bell*, 564 F.2d 734, 735 (5th Cir.1977). "Weighing against the grant of a 60(b) motion is the desirability of finality in

judgments. This is particularly true where the reopening of a judgment could unfairly prejudice the opposing party." *Id.* at 736. Indeed, courts have been particularly reluctant to reopen cases where the parties consented to the entry of final judgment, thereby voluntarily ending litigation. *Boch Oldsmobile*, 909 F.2d at 660.

## EFFECT OF SUBSEQUENT LEGISLATION ON FINAL JUDGMENTS

■ "Legislation may act on subsequent proceedings, may abate actions pending, but when those actions have passed into judgment the power of the legislature to disturb the rights created thereby ceases." *McCullough v. Virginia*, 172 U.S. 102, 123–24, 19 S.Ct. 134, 142, 43 L.Ed. 382 (1898). Moreover, the fact that a statute invalidates pre-existing case law does not justify relief from final judgment. *Collins v. City of Wichita*, 254 F.2d 837, 839 (10th Cir.1958). Limited exceptions to this general proposition are found in cases that rendered equitable remedies for public rights, rather than remedies at law for private individuals. *Daylo v. Administrator of Veterans' Affairs*, 501 F.2d 811, 816–17 (D.C.Cir.1974) (citing *Pennsylvania v. Wheeling & Belmont Bridge Co.*, 59 U.S. (18 How.) 421, 15 L.Ed. 435 (1855); *Hodges v. Snyder*, 261 U.S. 600, 43 S.Ct. 435, 67 L.Ed. 819 (1923)).

## DISCUSSION

*1. Mistake*

■ Plaintiffs first argue that this Court should grant them relief pursuant to Rule 60(b)(1), which allows relief from judgment for "mistake" if the motion is made within a year of judgment. Although the plaintiffs have complied with the time constraint of Rule 60(b)(1), the Court finds no mistake to justify setting aside the judgment.

The plaintiffs argue that, in light of subsequently passed legislation, the Florida Supreme Court erred in its interpretation of § 624.155. When it rendered its decision in *McLeod*, however, the Florida Supreme Court did not have the benefit of the Florida Legislature's statement disclosing its intent

that § 624.155 encompass damages arising from the actions of a third-party tortfeasor. Accordingly, the Florida Supreme Court properly based its ruling on the wording of the statute, and its legislative history as available at the time of the decision.

### 2. Other Reasons Justifying Relief

In the alternative, the plaintiffs seek relief under Rule 60(b)(6), which allows relief for any other reason justifying relief if the motion is made within a reasonable time. The plaintiffs have moved for relief within one year of the entry of judgment, a period which the court finds reasonable. However, the Court finds no grounds to justify relief.

Plaintiffs rely on *Ritter v. Smith*, 811 F.2d 1398 (11th Cir.) *cert. denied*, 483 U.S. 1010, 107 S.Ct. 3242, 97 L.Ed.2d 747 (1987) for the proposition that a supervening change in the law is grounds for vacating a judgment under Rule 60(b)(6). In *Ritter*, the Eleventh Circuit decided that a state criminal sentence statute was unconstitutional. *Id.* at 1399. The Eleventh Circuit ordered the district court to grant a writ of habeas corpus unless the defendant were given a new sentence within 180 days. *Id.* After the district court entered the conditional mandate, but prior to the expiration of the 180-day period, the United States Supreme Court handed down a decision in a similar case expressly disagreeing with the *Ritter* decision. In light of that decision, the State in *Ritter* filed a Rule 60(b)(6) motion. Following the United States Supreme Court's decision, the district court granted the motion, set aside its conditional mandate, and denied all habeas corpus relief. *Id.* at 1400. In affirming the district court's decision, the Eleventh Circuit relied on three factors: (1) the similarity between the case at bar and the subsequent case altering the law; (2) the minimal delay in filing the motion; and (3) the fact that final judgment had not been executed. *Id.* at 1401–02.

▌ First, the Eleventh Circuit determined that the close relationship between *Ritter* and the case that altered existing case law justified relief. *Id.* at 1402. In *Ritter*, subsequent case law altered prior case law. In the case at bar, however, plaintiffs rely on subsequent *legislation*, not subsequent case law, to alter a final judgment. Although legislation may affect future case law, it may not take away rights that have been vested by a final judgment. *McCullough*, 172 U.S. at 123–24, 19 S.Ct. at 141–42. "A contrary general rule would subject all judicial action to superior legislative review, a regime obviously inconsistent with due process of law and subversive of the constitutional independence of the judicial branch of government." *Daylo*, 501 F.2d at 816. The *Ritter* court also relied on the fact that there was only a minimal delay between the issuance of the judgment and the filing of the motion. Although the plaintiffs in this case filed a timely motion, this factor alone does not warrant relief from judgment. Finally, the *Ritter* court stated that, because the final judgment had not been executed, the greater interest in finality did not exist. *Id.* at 1401. In the present case, however, no execution has issued because this Court entered final judgment in favor of the defendant. Plaintiffs' argument that this case is similar to *Ritter* with respect to execution ignores this circumstance. Setting aside the judgment in the instant case would contravene the principle of finality and cloud final judgments that require no execution.

### CONCLUSION

Based on the foregoing considerations, this Court finds neither mistake, nor any other reason justifying relief from final judgment. Thus, it is

ORDERED AND ADJUDGED that William Adams, Dorothy Adams, Thomas Shelton and Elizabeth Shelton's motion for relief from final judgment be and the same is hereby DENIED.