[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-12266
Argument Calendar
_____

D.C. Docket No. 8:13-cv-00365-EAK-AEP

MARY BOTTINI,
as Personal Representative of the
Estate of Gerard Bottini,

Plaintiff - Appellee,

versus

GEICO,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(June 15, 2017)

Before TJOFLAT and MARCUS, Circuit Judges, and STEELE,[*] District Judge.

TJOFLAT, Circuit Judge:

In this § 1292(b) interlocutory appeal, we consider a narrow issue concerning claims against uninsured/underinsured motorist ("UM") insurance[1] providers under Florida law.  Florida, by statute, imposes a duty on insurers to settle their policyholders' claims in good faith.  Fla. Stat. § 624.155.  If a UM insurer fails to settle a legitimate claim within the statutory time limit, its policyholder may obtain, through two lawsuits, two sets of damages:  one for breach of contract up to the policy maximum and another for bad faith for the full amount of the policyholder's injury ("statutory damages").[2]  Here, the parties disagree about whether the Court in this bad-faith case is bound by the state court jury's determination of damages in the underlying UM breach-of-contract action.

During the pendency of this appeal—but prior to oral argument—the Florida Supreme Court held that the determination of damages in a UM contract case is binding in a subsequent bad-faith case.  *Fridman v. Safeco Ins. Co. of Ill.*, 185 So.

---

[*] Honorable John E. Steele, United States District Judge for the Middle District of Florida, sitting by designation.

[1] UM insurance protects policyholders against losses caused by UMs—drivers who lack sufficient insurance to cover the damages they cause to others.

[2] Statutory damages "include the total amount of the claimant's damages, including the amount in excess of the policy limits . . . and any damages caused by a violation of a law of [Florida]." Fla. Stat. § 627.727(10).  Pursuant to the statute, after a claimant's damages are determined, a court would also assess "interest on unpaid benefits, reasonable attorney's fees and costs." *Id.*  "The total amount of the claimant's damages is recoverable whether caused by an insurer or by a third-party tortfeasor." *Id.*

3d 1214, 1216 (Fla. 2016).  Critical to this appeal, however, *Fridman* contained a caveat that the parties have a right to appellate review of the statutory-damages determination before it becomes binding in the subsequent bad-faith case.  *Id.* at 1226.  We conclude that the defendant, GEICO, did not receive appellate review of the statutory-damages determination in the parties' underlying breach-of-contract case.  Therefore, that damages determination does not bind the parties in this bad-faith case.  We thus reverse the District Court's order granting partial summary judgment on the binding effect of the verdict in the Circuit Court's breach-of-contract case, and hold that the parties must again litigate statutory damages.

I.

This case began tragically.  On March 3, 2007 at around 12:10 AM, Gerard Bottini was traveling on I-75 in Hillsborough County, Florida.  A car ahead of him caught fire and began emitting smoke, obscuring his view of the road.  As a result, he lost control of his vehicle, which left the roadway, rolled over, and ejected him. He died later that day from his injuries.

The vehicle Mr. Bottini was driving was insured by a GEICO policy that provided $50,000 of UM coverage.  The car that caught fire was underinsured for purposes of Fla. Stat. § 627.727.  After Mr. Bottini's death, Mary Bottini, his wife, became the personal representative of Mr. Bottini's estate.  In the months following the crash, Ms. Bottini's lawyer sent two letters to GEICO demanding

payment of the policy maximum because Mr. Bottini was not at fault, and GEICO

had possession of crash reports supporting that conclusion.  GEICO denied the

requests, stating that it was still conducting its own investigation to determine

whether Mr. Bottini was at fault for the accident, which would render the coverage

inapplicable.

On August 8, 2007, 104 days after Ms. Bottini's lawyer sent her first letter to

GEICO and 158 days after the crash, she filed a Civil Remedy Notice of Insurer

Violation ("CRN") with the Florida Department of Financial Services.  Filing the

CRN is a statutory prerequisite to filing a bad-faith claim against an insurer.  Fla.

Stat. § 624.155(3).  As required by § 624.155(3)(b)(1), Ms. Botini's CRN listed the

statutory provisions that she alleged GEICO was violating by failing to honor her

claim.[3]  GEICO responded to Ms. Botini's CRN on October 5, 2007, stating that its

---

[3] The CRN specified that GEICO was allegedly violating Fla. Stat. §§ 624.155(1)(a)(1) and 624.155(1)(b)(1).  Section 624.155(1)(a)(1) provides, in relevant part, that "[a]ny person may bring a civil action against an insurer when such person is damaged [b]y a violation of . . . Section 626.9541(1)(i)."  Section 626.9541(1)(i) prohibits

> [c]ommitting or performing with such frequency as to indicate a general business practice any of the following:
>
> a.  Failing to adopt and implement standards for the proper investigation of claims;
>
> . . .
>
> c.  Failing to acknowledge and act promptly upon communications with respect to claims;
>
> . . .
>
> e.  Failing to affirm or deny full or partial coverage of claims . . . .

4

investigation had led it to conclude that smoke from the vehicle in front of Gerard Bottini did not cause him to lose control of his vehicle, it had not acted in bad faith, and it would "continue to make every attempt to resolve this claim amicably." About two weeks later, in an apparent change of heart, GEICO sent Ms. Bottini's lawyer a check for the full $50,000, including with it a complete release of liability for any related claims.[4] Ms. Bottini rejected the release of liability and returned the check.

In April 2008, Ms. Bottini sued GEICO in the Circuit Court for Hillsborough County, Florida seeking benefits under the UM policy. GEICO defended on the basis that Mr. Bottini was negligent in driving his vehicle and such negligence was either the sole or contributing cause of the accident. Ms. Bottini countered that the vehicle that caught fire ahead of Mr. Bottini was maintained and operated negligently, and *that* negligence caused the crash, not any breach of duty committed by Mr. Bottini.

The case was tried to a jury, and the jury found for Ms. Bottini. It decided that Mr. Bottini was not negligent, that both the operator and owner of the smoking

---

Section 624.155(1)(b)(1) provides a civil action against an insurer who fails to "attempt[] in good faith to settle claims when, under all the circumstances, it could and should have done so, had it acted fairly and honestly toward its insured and with due regard for her or his interests."

[4] GEICO's tender of the $50,000 took place 76 days after the initial filing of the CRN, which meant it could not avail itself of Fla. Stat. § 624.155(3)(d), which provides, "No [bad-faith] action shall lie if, within 60 days after filing [the CRN], the damages are paid or the circumstances giving rise to the violation are corrected."

5

vehicle were negligent, and that GEICO was therefore liable.  The jury also decided the full extent of damages arising from the accident—$103,552 to the estate; $14,522,478 to Ms. Bottini for loss of support, services, companionship, and pain and suffering; and around $5,400,000 to each of Mr. Bottini's three children for loss of support and services, parental companionship, instruction and guidance, and pain and suffering.  In total, the jury found damages amounting to $30,872,266.

Following the verdict, GEICO filed motions for new trial and remittitur, but those were denied.  It then filed a motion in the Circuit Court to limit the judgment to the $50,000 policy maximum, and that motion was granted.  Thus, after reciting the jury's $30,872,266 damages verdict and assessing setoffs,[5] the Court entered a final judgment for $50,000.

GEICO appealed the judgment to the Second District Court of Appeal.  It sought a new trial on several grounds, three of which were pertinent to the computation of damages.  It argued that Ms. Bottini's counsel impermissibly attacked the character of the driver of the vehicle that caught fire, that Ms.

---

[5] The setoffs resulted from settlements the Bottinis received from two other insurance policies.  One was a $25,000 settlement tendered to the Plaintiff by the insurer of the vehicle that caught fire, and the other was a $1,000,000 settlement from Transcontinental Insurance Company.  Transcontinental also insured the Bottini vehicle and provided UM benefits.  Transcontinental tendered its $1,000,000 policy limit after receiving the same CRN that GEICO received.  It, however, tendered its policy maximum within the sixty-day limit set forth in Fla. Stat. § 624.155(3)(d) and therefore relieved itself of liability under §624.155. *See supra* note 4.

6

Bottini's counsel made a highly inflammatory closing argument, and that $30,000,000 in damages was excessive and against the "manifest weight of the evidence." GEICO also contended that the judgment clearly reflected a "punitive component" as a result of "prejudicial and improperly admitted evidence and argument."

The Second District affirmed the judgment in a short per curiam opinion that reads in its entirety as follows:

> Geico General Insurance Company raised five issues in this appeal. We conclude that none of the issues warrants reversal. We note that Geico's arguments include claims of error that impacted the amount of damages determined by the jury. The jury verdict found that the Estate's damages were $30,872,266. But the judgment amount entered by the trial court against Geico is $50,000, based on the applicable insurance policy limits. Based on the evidence presented, we are satisfied that even if Geico were correct that errors may have affected the jury's computation of damages, in the context of this case and the amount of the judgment, any such errors were harmless. Thus, we do not address further Geico's claims of error.

*Geico Gen. Ins. Co. v. Bottini*, 93 So. 3d 476, 477 (Fla. Dist. Ct. App. 2012).

Judge Altenbernd wrote separately to address the elephant in the room—the effect of the jury's calculation of damages in the UM suit on the inevitable, forthcoming bad-faith lawsuit:

> This appeal is motivated by the lawsuit that both parties know will follow. The Estate will sue GEICO under section 624.155, Florida Statutes (2006), for failure to settle this claim at an earlier time . . .
> The statute does not explain how the finder of fact in the next lawsuit determines the "total amount" of the claimant's damages. Not unreasonably, both sides in this appeal anticipate that the Estate will attempt to use the

7

verdict in this case as evidence of the total amount of damages in the next lawsuit.

Constitutionally, this court is given power to review final judgments for reversible error. We can also write an opinion affirming a judgment as to issues that, if we were to reach an opposite result, would lead to a reversal of the judgment. But I am unconvinced that we have a scope of review that allows us to rule on issues that do not and cannot affect the judgment on appeal. In this case, given that we decided to affirm on the issues relating to liability, GEICO essentially wants this court to write an opinion that affirms the judgment, but "reverses" the verdict as to elements of damage not included within the judgment. I simply conclude that this court does not have the power to issue such an opinion. The fact that such an opinion might be convenient for purposes of the next lawsuit or facilitate its settlement does not change the authority given to me under the Florida Constitution.

Accordingly, this concurrence permits both sides to know that at least one judge on this panel has not decided that the verdict is correct or incorrect. . . . If I am refusing to do that which the law requires me to do, I would assume that by writ of mandamus the supreme court could order me to conduct such a review. If so ordered, I would perform that review.

*Id.* at 478 (Altenbernd, J., concurring) (footnote omitted). GEICO did not seek discretionary postjudgment review in the Second District or in the Supreme Court of Florida.

Ms. Bottini brought this action in the District Court on February 8, 2013, invoking the Court's diversity jurisdiction under 28 U.S.C. § 1332. She alleged that GEICO acted in bad faith, violating several provisions of Fla. Stat. § 624.155. She contended that she was therefore entitled, in accordance with Fla. Stat. § 627.727(10), to the full amount of damages designated by the jury in the UM breach-of-contract lawsuit. Ms. Bottini then moved the District Court for summary judgment on the issue of damages, arguing that the Circuit Court jury verdict fixed

8

the damages at $30,872,266.  GEICO countered, arguing that it never received

appellate review of that damages verdict; therefore, giving effect to the verdict in

the bad-faith lawsuit would violate its right to procedural due process.

The District Court granted Ms. Bottini's motion, holding that the verdict was

binding as the measure of damages in the bad-faith suit.  GEICO subsequently

filed a motion for reconsideration of the District Court's order, or alternatively, to

certify the order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).[6]  The

District Court denied reconsideration but certified the order for interlocutory

appeal.  This Court agreed to hear the appeal.

## II.

In this Part, we explain the mechanics of an insurer-bad-faith suit under

Florida law.  Part II.A details the history of Florida's bad-faith cause of action.

Part II.B explains the requirements for a plaintiff to prevail on a bad-faith claim

against a UM insurer, including the Florida Supreme Court's recent clarification in

---

[6] 28 U.S.C. § 1292(b) provides, in full,

When a district judge, in making in a civil action an order not otherwise
appealable under this section, shall be of the opinion that such order involves a
controlling question of law as to which there is substantial ground for difference
of opinion and that an immediate appeal from the order may materially advance
the ultimate termination of the litigation, he shall so state in writing in such order.
The Court of Appeals which would have jurisdiction of an appeal of such action
may thereupon, in its discretion, permit an appeal to be taken from such order, if
application is made to it within ten days after the entry of the order: *Provided,*
*however,* That application for an appeal hereunder shall not stay proceedings in
the district court unless the district judge or the Court of Appeals or a judge
thereof shall so order.

*Fridman* that the underlying UM breach-of-contract suit determines forward-looking damages.

A.

In 1982, the Florida legislature enacted § 624.155, which imposed on insurers a duty to administer policyholders' claims in good faith and equipped policyholders with a cause of action against insurers that failed to do so.  Fla. Stat. § 624.155(1)(b)(1); *Fridman*, 185 So. 3d at 1220.  Accordingly, an insurer that fails to settle a legitimate claim in good faith is subject to liability both for breaching its contract with the policyholder—the insurance policy—and for violating Florida's bad-faith statute.

Before a policyholder can bring a bad-faith claim under § 624.155, he must first give notice to the insurance company.  Fla. Stat. § 624.155(3)(a).  The policyholder's notice, the CRN, must allege specific statutory violations and detail the facts giving rise to, and the policy language relevant to, the claim.[7]  Fla. Stat. §

---

[7] Specifically, the statute requires that:

(b) The notice shall be on a form provided by the department and shall state with specificity the following information, and such other information as the department may require:

>    1. The statutory provision, including the specific language of the statute, which the authorized insurer allegedly violated.
>    2. The facts and circumstances giving rise to the violation.
>    3. The name of any individual involved in the violation.
>    4. Reference to specific policy language that is relevant to the violation, if any. If the person bringing the civil action is a third party claimant, she or he shall not be required to reference the specific policy language if the authorized insurer has not

10

624.155(3)(b)(1)–(5).  After the insurer receives the CRN, it has sixty days to either pay the policyholder or "correct[]" "the circumstances giving rise to the violation."  Fla. Stat. § 624.155(3)(d).  If the insurer pays or corrects the circumstances giving rise to the violation, the policyholder's bad-faith cause of action is extinguished.  *Id.*  If the insurer does neither, like GEICO here, the policyholder may proceed with his suit.

For several years after the statute was enacted, Florida courts struggled to understand how to calculate damages in UM bad-faith suits.  The Florida Supreme Court initially interpreted the statute to allow damages in excess of the UM policy only when the damages were "the natural, proximate, probable, or direct consequence of the insurer's bad faith actions."  *McLeod v. Cont'l Ins. Co.*, 591 So. 2d 621, 626 (Fla. 1992).  In other words, if an insurer's bad-faith conduct amounted to a simple delay in settling a legitimate claim, a policyholder ordinarily could not recover damages beyond the policy maximum and the costs associated

---

provided a copy of the policy to the third party claimant pursuant to written request.
5. A statement that the notice is given in order to perfect the right to pursue the civil remedy authorized by this section.

Fla. Stat. § 624.155(3)(b)(1)–(5).

11

with litigation. *Fridman*, 185 So. 3d at 1221. The legislature rebuked the *McLeod* interpretation, enacting § 627.627(10), which reads as follows:

> The damages recoverable from an uninsured motorist carrier in an action brought under s. 624.155 *shall include the total amount of the claimant's damages, including the amount in excess of the policy limits*, any interest on unpaid benefits, reasonable attorney's fees and costs, and any damages caused by a violation of a law of this state. The total amount of the claimant's damages is recoverable whether caused by an insurer or by a third-party tortfeasor.

Fla. Stat. § 627.627(10) (emphasis added). Florida courts thereafter acknowledged that § 627.727(10) "clearly and unambiguously reflects the legislative intent that the damages in section 624.155 bad faith actions *shall* include any amount in excess of the policy limits." *Fridman*, 185 So. 3d at 1221 (emphasis in original).

B.

Before a policyholder may file a bad-faith lawsuit in which she alleges that her UM insurer failed to settle a meritorious claim in good faith, she must first establish that her claim was, indeed, meritorious. *Blanchard v. State Farm Mut. Auto. Ins. Co.*, 575 So. 2d 1289, 1291 (Fla. 1991). She does so by obtaining a determination that her insurer is contractually liable under her UM insurance policy. *Id*; *Fridman*, 185 So. 3d at 1224. In addition to establishing contractual liability, the policyholder must also obtain a full determination of damages arising

12

out of the event giving rise to the UM claim.[8]  As the Florida Supreme Court put it, "the determination of the existence of liability on the part of the uninsured tortfeasor and the extent of the [insured's] damages are elements of a cause of action for bad faith."  *Vest v. Travelers Ins. Co.*, 753 So. 2d 1270, 1275 (Fla. 2000) (quoting *Blanchard*, 575 So. 2d at 1291) (quotation marks omitted) (alteration in original).

But how is the damages element established in a bad-faith action?  Is the initial statutory damages determination binding in the subsequent bad-faith action?  Previous courts had reached conflicting conclusions.[9]  The Florida Supreme Court recently clarified in *Fridman* that the damages determination in the underlying UM judgment does in fact bind the court in the subsequent bad-faith action:

> [I]t is obvious that the UM verdict to which the insured is entitled must be binding in the bad faith action. Because a determination of the full extent of the insured's damages is one of the prerequisites to a bad faith cause of action, to preclude a UM verdict in excess of the policy limits from being used in the bad faith case would force the parties to relitigate the issue of damages a second time prior to the bad

_____

[8] As the Florida Supreme Court noted in *Fridman*, however, contractual liability and damages need not be determined by a jury—"an agreed settlement, arbitration, or stipulation before initiating a bad faith cause of action" would work as well.  185 So. 3d at 1224.

[9] *Compare King v. Gov't Emps Ins. Co.*, No. 8:10-CV-977-T-30AEP, 2012 WL 4052271 (M.D. Fla. Sept. 13, 2012) (noting that the jury verdict in the UM suit was not binding on the subsequent bad-faith suit); *Harris v. Geico Gen. Ins. Co.*, 961 F. Supp. 2d 1223 (S.D. Fla. 2013), *aff'd*, 619 F. App'x 896 (11th Cir. 2015) (same) *with Wiggins v. Allstate Prop. & Cas. Ins. Co.*, No. 13-23354-CIV, 2015 WL 1396583, at *4 (S.D. Fla. Mar. 6, 2015), *report and recommendation adopted sub nom. Wiggins v. Allstate Prop. & Cas. Ins. Co.*, No. 13-CV-23354, 2015 WL 1402970 (S.D. Fla. Mar. 18, 2015) (finding that the UM jury verdict was binding as a measure of damages in the bad-faith suit); *Cadle v. Geico Gen. Ins. Co.*, No. 6:13-CV-1591-ORL-31GJK, 2014 WL 4983791, at *2 (M.D. Fla. Oct. 6, 2014) (same).

faith trial.  This would be an obvious waste of judicial and litigant resources.  It would also result in serious, unintended consequences, such as "running the almost-certain risk of inconsistent verdicts; potentially raising comity issues between state and federal courts; creating a discrepancy . . . between first- and third-party bad faith claims; placing an inexplicable burden on plaintiffs to prove their cases twice; and causing a great deal of judicial inefficiency."

185 So. 3d at 1224–25 (citation omitted).

Given the significance of the initial statutory-damages determination, the Court held that parties have a right to appeal it.  The Court rejected the argument that appellate courts lack jurisdiction to review damages in excess of the policy maximum and additionally rejected the Second District's reasoning in *Bottini* that errors in calculating damages are subject to mere harmless-error review:

> [W]e do not agree . . . that the appellate court is without jurisdiction to review the UM verdict.
>
> District courts of appeal have appellate jurisdiction under article V, section 4(b)(1), of the Florida Constitution. While district courts do not have jurisdiction over all non-final orders, in this case, the final judgment including the determination of the full extent of damages was properly within the jurisdiction of the [District Court of Appeal].  Further, once the trial court denied Safeco's motion for a new trial, rejecting a claim of an excessive verdict, that order also became subject to appellate review—as Safeco evidently understood when it filed its appeal in this case.
>
> We therefore respectfully disagree with the view that a district court lacks jurisdiction to review an excess verdict, if the amount of damages was not included within the final judgment.
> . . .
>
> We also disagree with the view taken by the Second District Court of Appeal in *Bottini*, in which it held that "even if Geico were correct that errors may have affected the jury's computation of damages," any errors in the jury's computation of damages were "harmless" . . . .  [T]he damages reflected in the UM verdict are

14

significant relative to the UM policy limits because the damages will eventually become part of the subsequent bad faith case.

*Id.* at 1226–28.  Denying the parties a right to appeal the binding damages determination, the Court reasoned, could give rise to procedural due process problems.  *Id.* at 1226.  To prevent such problems, the Court concluded that damages determinations in this context are not binding unless both parties are afforded an "opportunity . . . to obtain appellate review of any timely raised claims of error in the determination of damages obtained in the UM trial."  *Id.*

*Fridman* therefore provides the framework we must apply in determining whether the UM verdict in the case underlying this appeal is binding in the bad-faith action in the District Court.

### III.

To determine whether the UM verdict now binds GEICO, we must resolve two questions.  First, did GEICO actually receive appellate review of the Circuit Court's determination of statutory damages?  Second, if GEICO did not receive appellate review, did its failure to pursue further review of the Second District's decision waive any objection it might have had to using that determination in the bad-faith suit?  We address each question in turn.

15

A.

To determine whether GEICO received appellate review of the Circuit Court

jury's damages calculation, we must examine the Second District's decision.  As

noted above, the decision offers little to parse:

> Geico General Insurance Company raised five issues in this appeal.
> We conclude that none of the issues warrants reversal.  We note that
> Geico's arguments include claims of error that impacted the amount
> of damages determined by the jury.  The jury verdict found that the
> Estate's damages were $30,872,266.  But the judgment amount
> entered by the trial court against Geico is $50,000, based on the
> applicable insurance policy limits.  Based on the evidence presented,
> we are satisfied that even if Geico were correct that errors may have
> affected the jury's computation of damages, in the context of this case
> and the amount of the judgment, any such errors were harmless.
> Thus, we do not address further Geico's claims of error.

*Bottini*, 93 So. 3d at 477.  Though it is short, the opinion reveals that the Second

District did not review the errors GEICO alleged to the extent such errors may

have impacted damages beyond the $50,000 policy maximum.  The Court refused

to do so because it believed that "any such errors were harmless."  *Id.*  Because the

Second District chose not to address GEICO's alleged errors, we hold that it failed

to provide the appellate review to which GEICO was entitled under Florida law.

Our interpretation of the Second District's opinion is not shaken by the

Court's statement that "none of the issues [raised by GEICO] warrants reversal."

*Id.*  As explained above, the Court reached this conclusion not because it found

that errors had not tainted the jury's computation of damages, but because it

16

mistakenly believed that the alleged errors, "even if" they had occurred, would not warrant reversal.  Nowhere does the Court say that the jury did not commit errors, and to nevertheless interpret its opinion in that way would render superfluous its discussion of harmlessness.

We are not the only Court to interpret the Second District's opinion in this way.  In *Fridman*, the Florida Supreme Court repudiated the Second District's harmless-error approach.  185 So. 3d at 1228.  If the Second District had actually reviewed the errors alleged by GEICO, then the Florida Supreme Court would have nothing to repudiate.  But the Florida Supreme Court did repudiate because it, like us, read the Second District's opinion as demonstrating the Second District's failure to review for errors due to a mistaken belief that such a review would be inconsequential "in the context of [the] case." *Bottini*, 93 So. 3d at 477.

Because the Second District did not review the errors alleged by GEICO, we conclude that GEICO has been denied its "right to appellate review of properly preserved claims of error in the determination of damages." *Fridman*, 185 So. 3d at 1224.  We now turn to whether GEICO waived its right to appellate review by failing to take any additional actions after the Second District issued its opinion.

## B.

As Ms. Bottini observes, GEICO had several options available to it to seek review of the Second District's decision.  It could have sought review in the

17

Second District by moving the Court to clarify or rehear its decision under Fla. R. App. P. 9.330(a); it could have moved the Second District to rehear the case en banc under Fla. R. App. P. 9.331; it could have sought review in the Florida Supreme Court under Fla. R. App. P. 9.330(a) or 9.120; and it could have taken Judge Altenbernd's suggestion to file a writ of mandamus in the Florida Supreme Court. Did its failure to take any of these steps deprive it of the right to object to using the damages verdict in the District Court?

We think not. Had GEICO failed to appeal the verdict to the Second District, the answer may be different. However, the key difference between an appeal to a district court of appeal and all of the alternative procedures listed above is that the alternative procedures are all discretionary. None guarantees that GEICO would have had its argument considered. By contrast, a litigant can appeal to a district court of appeal as a matter of right. Fla. Const. art. V, § 4. When, in *Fridman*, the Florida Supreme Court characterized appellate review as a *right* afforded to the parties, we think it must have been referring to appellate review in a district court of appeal, the only court in which the litigants have a right to appellate review. *Fridman*, 185 So. 3d at 1224. This is why the Second District erred for failing to review GEICO's alleged errors—it did not vindicate that right.

Moreover, it is not self-evident how a waiver rule other than failing to appeal to a district court of appeal would work in this case. Because GEICO had

18

several options available to it, which options would have satisfied a waiver rule? Would GEICO have to exhaust its remedies and pursue all of them? Would it have to pursue only one, and, if so, which one? Perhaps Ms. Bottini might argue that GEICO had to do *something*. But GEICO did do something: it appealed to the Second District, the only court in which it was guaranteed to have its argument heard. We do not read in to *Fridman* a mandate to pursue additional discretionary review after a district court of appeal issues its judgment.

True, the Florida Supreme Court in *Fridman* discussed the District Court's order in this case in which the District Court seems to acknowledge the existence of some form of waiver to appellate review. In doing so the Court does not explicitly disapprove of the District Court's reasoning:

> When the *Bottini* litigants proceeded with the bad faith case, Judge Kovachevich came to the conclusion that the amount of damages is necessarily determined in the underlying UM action and also determined that the insurer failed to pursue further relief to review the Second District's decision. *See Bottini v. Geico Gen. Ins. Co.*, No. 8:13–CV–365–T–17AEP, 2014 WL 4749054, at *12 (M.D.Fla. Sept. 23, 2014).

*Fridman*, 185 So. 3d at 1228. Nevertheless, even if we interpret the Florida Supreme Court as implicitly endorsing some sort of waiver rule by referring to the District Court's statement that "the insurer failed to pursue further relief to review the Second District's decision," such a waiver must jibe with the rest of the opinion, which characterizes appellate review as a "right." *Id.* at 1224, 1227. We

19

do not think the Florida Supreme Court was referring to a right to file a piece of paper with a court that had no obligation to consider the contents of the paper. Because GEICO did, in fact, raise its objection in the Second District—the only Court required to consider its argument—we do not add a gloss onto *Fridman* requiring a litigant to pursue further, discretionary review after a district court of appeal renders its decision.

### IV.

We therefore conclude that the measure of damages determined by the jury in Bottini's underlying UM suit does not bind the parties in the present bad-faith action in the District Court. GEICO is entitled to a new damages determination. Accordingly, we REVERSE the grant of partial summary judgment and REMAND for further proceedings consistent with this opinion.

SO ORDERED.