# Supreme Court of Florida

_____

No. SC13-1607
_____

**ADRIAN FRIDMAN,**
Petitioner,

vs.

**SAFECO INSURANCE COMPANY OF ILLINOIS,**
Respondent.

[February 25, 2016]

PARIENTE, J.

The conflict issue in this case is whether an insured is entitled to a
determination of liability and the full extent of his or her damages by first bringing
an uninsured/underinsured motorist (UM) action <u>before</u> litigating a first-party bad
faith cause of action under section 624.155, Florida Statutes (2007). The related
issues we address are whether that determination of damages is then binding, as an
element of damages, in a subsequent first-party bad faith cause of action against
the same insurer, and whether the trial court in this case erred in retaining
jurisdiction to allow the insured to file a bad faith cause of action.

In Safeco Insurance Co. of Illinois v. Fridman, 117 So. 3d 16, 19-20 (Fla. 5th DCA 2013), the Fifth District Court of Appeal held that after the insurer tendered the UM policy limits of $50,000 and "confessed judgment" in that amount, the insured's UM action became moot. The Fifth District accordingly vacated the jury verdict that had been reached at the conclusion of the UM trial, setting the insured's damages at $1,000,000.

The Fifth District's decision conflicts with a long line of cases from this Court that hold that a determination of liability and the full extent of damages is a prerequisite to a bad faith cause of action. See, e.g., Vest v. Travelers Ins. Co., 753 So. 2d 1270, 1275 (Fla. 2000); Imhof v. Nationwide Mut. Ins. Co., 643 So. 2d 617, 619 (Fla. 1994), receded from on other grounds, State Farm Mut. Auto. Ins. Co. v. Laforet, 658 So. 2d 55, 63 (Fla. 1995); Blanchard v. State Farm Mut. Auto Ins. Co., 575 So. 2d 1289, 1291 (Fla. 1991). We have jurisdiction. See art. V, § 3(b)(3), Fla. Const.[1]

For the reasons explained in this opinion, we hold that an insured is entitled to a determination of liability and the full extent of his or her damages in the UM action before filing a first-party bad faith action. That determination of damages is

---

1. The American Insurance Association, the Property Casualty Insurers Association of America, the National Association of Mutual Insurance Companies, and the Florida Insurance Council filed a joint amicus curiae brief in support of the Respondent, Safeco Insurance Company of Illinois.

then binding, as an element of damages, in a subsequent first-party bad faith action against the same insurer so long as the parties have the right to appeal any properly preserved errors in the verdict. The history of first- and third-party bad faith actions, this Court's precedent, and the legislative intent to eliminate the distinction between first- and third-party bad faith claims all support our conclusion. We also conclude that the trial court in this case did not err in retaining jurisdiction to allow the filing of a bad faith cause of action. Accordingly, we quash the Fifth District's decision and remand for further proceedings consistent with this opinion.

## FACTS AND BACKGROUND

In January 2007, Petitioner Adrian Fridman suffered injuries as a result of an automobile accident with an underinsured motorist. After the accident, Fridman filed a claim with Safeco Insurance Company of Illinois, his insurer, for the $50,000 limits of his UM policy. By October 2008, after Safeco refused to pay, Fridman filed a Civil Remedy Notice, as required by section 624.155(3)(a), Florida Statutes (2007). The notice, in which he alleged that Safeco failed to attempt in good faith to settle his UM claim in violation of section 624.155(1)(b)1, set forth the following facts and circumstances:

> Failure to pay UM policy limits of $50,000 in a clear liability crash with over $12,000.00 of property damage to insured's vehicle. Insured has sustained medical bills in excess of $16,800.00 [and] out of pocket medical expenses in excess of $8,000.00. Insured has sustained C3/4 and C5/6 disc herniations, as well as L5S1 disc herniation which displaces the S1 nerve root. NCV/EMG testing

- 3 -

revealed C6/7 radiculopathy and right carpel tunnel syndrome. Insured is without any health insurance to cover future medical treatment which insured will require. Insurer has failed to offer the $50,000.00 uninsured motorist coverage policy limits in spite of the demand to do so, and has instead made a wholly inadequate offer of $5,000.00

In April 2009, after having received no response from Safeco within the statutory sixty-day civil remedy notice period or any time thereafter, Fridman filed a complaint against Safeco to determine liability under the UM policy and the full extent of the damages he suffered in the accident with the underinsured driver. In the complaint, he stated that he was "entitled to recover damages from the Defendant, Safeco Insurance Company of Illinois, in accordance with the provisions of § 627.727." That section provides that the damages an insured can recover in a bad faith action "shall include the total amount of the claimant's damages, including the amount in excess of the policy limits, any interest on unpaid benefits, reasonable attorney's fees and costs, and any damages caused by a violation of a law of this state." § 627.727(10), Fla. Stat. (2007) (emphasis added).

In February 2010, Fridman filed a notice of a settlement proposal pursuant to Florida Rule of Civil Procedure 1.442 and section 768.79, Florida Statutes (2010), in the amount of $50,000. Safeco did not respond and, thus, the unanswered proposal for settlement was deemed rejected after thirty days. See § 768.79, Fla. Stat.; Fla. R. Civ. P. 1.442(f).

The month before the case was originally set for trial in March 2011—over four years after the automobile accident—Safeco tendered a check to Fridman for the $50,000 policy limits, stating on the check that it was the full and final settlement of any and all claims. Fridman rejected the check containing this language. Safeco moved for a continuance, which the trial court granted.

About six months later, prior to the rescheduled trial, Safeco tendered a new check for $50,000—not containing the settlement language—and filed both a "confession of judgment" and a separate motion for entry of confession of judgment. Fridman opposed the entry of a confessed judgment, arguing, among other things, that a jury verdict would determine the upper limits of Safeco's potential liability under a future bad faith claim.

At the hearing on the motion to confess judgment, Fridman's counsel indicated Fridman's intention to later file a bad faith action, which he explained he had not already filed because he was under the impression that precedent precluded an insured from bringing a bad faith action in the same complaint as the UM action. Fridman's counsel stated that "some lawyers used to file their UM and bad faith case concurrently, and then some case law has come out that says you're not allowed to do that because until you have some judgment in excess of the policy limits, it's premature and inappropriate to litigate a bad faith case concurrent with a UM case." The trial court ultimately denied Safeco's motion to "confess

judgment," finding that to do otherwise "would ignore the plain legislative intent of section 627.727(10)," governing the damages recoverable in bad faith actions.

The case proceeded to trial, and the jury found that the underinsured driver involved in the accident was negligent and one hundred percent responsible for Fridman's damages, which the jury determined to be $1,000,000. During the course of the trial, Safeco moved for a mistrial, alleging that Fridman's counsel made improper comments. The trial court denied that motion.

After the trial, Safeco filed a motion for a new trial, alleging that the trial court committed several errors, including allowing Fridman's counsel to make "impermissible, irrelevant, misleading, and inflammatory arguments" and permitting an excessive verdict that was not supported by the evidence. Safeco also timely filed a motion for remittitur of the jury's award.

The trial court denied the post-trial motions and entered a final judgment, which included the following language:

> 1. That the Plaintiff, ADRIAN FRIDMAN, recovers from Defendant, SAFECO INSURANCE COMPANY OF ILLINOIS, the sum of $50,000.00, that shall bear interest, pursuant to Florida Statute § 55.03 for which let execution issue, notwithstanding the excess jury verdict rendered in this matter.
> 2. The Court reserves jurisdiction to determine the Plaintiff's right to Amend his Complaint to seek and litigate bad faith damages from the Defendant as a result of such jury verdict in excess of policy limits. If the Plaintiff should ultimately prevail in his action for bad faith damages against Defendant, then the Plaintiff will be entitled to a judgment, in accordance with the jury's verdict, for his damages in the amount of $980,072.91 plus interest, fees and costs.

3. The Court hereby also reserves jurisdiction to consider any applicable attorney's fees and costs incurred in the Plaintiff's prosecution of this action for the purpose of entering a supplemental judgment in favor of the Plaintiff upon proper motion.

Safeco appealed the trial court's final judgment to the Fifth District, arguing that (1) the trial court should have granted its motion for entry of confession of judgment; (2) the final judgment was void because the trial court had no authority to reserve jurisdiction in the judgment to allow an amendment to the pleadings or establish Fridman's damages to be awarded in a future bad faith action; (3) the trial court erred in denying Safeco's motion for remittitur; and (4) the trial court erred in denying Safeco's motions for mistrial and new trial.

The Fifth District considered only the first two of these issues without reaching the other two trial-related issues. In its decision, the Fifth District vacated the jury's verdict and directed the trial court to enter an amended final judgment deleting any reference to the jury verdict and declining to reserve jurisdiction to consider a request to amend the complaint to add a claim seeking relief for bad faith under section 624.155. Fridman, 117 So. 3d at 19-21.

The Fifth District reasoned that where no dispute exists as to the policy limits or available coverage, the amount of the judgment in the UM case may not exceed the policy limits. Id. at 19. The Fifth District stated that "the only cause of action before the trial court was Fridman's UM claim" because "Fridman had appropriately not included a bad faith count in his complaint." Id. The Fifth

- 7 -

District determined that when Safeco confessed judgment in the amount of the policy limits, "the issues between the parties, as framed by the pleadings, became moot." Id. Instead of proceeding to trial, the Fifth District explained, "the trial court should have merely entered the confessed judgment in favor of Fridman, reserving jurisdiction to award costs, prejudgment interest, and, if authorized by law, reasonable attorney's fees." Id. at 20. The Fifth District reasoned that this "would provide Fridman a sufficient basis to pursue a bad faith claim against Safeco," because "Fridman can seek the full measure of damages afforded by [section 627.727(10)] in a subsequent bad faith action." Id. at 20-21.

Judge Sawaya wrote a lengthy dissenting opinion, explaining his disagreement with the majority's reasoning and the effect of its decision:

> This court today has declared void a jury verdict rendered in an uninsured motorist (UM) case brought against Safeco Insurance Company of Illinois because it refused to timely pay the uninsured motorist benefits under the policy it issued to the injured insured, Adrian Fridman. That verdict declares the full measure of the damages suffered by Fridman to be $1,000,000. In reaching its decision, the majority erroneously concluded that Fridman did not have a pending bad faith claim and if he did, he should have pled it in the complaint filed in the UM case. Because he did not, the majority holds that Safeco had the right to confess judgment for the policy limits of $50,000 shortly before trial and, based on the mootness doctrine, end Fridman's right to have the jury determine the full extent of his damages.
> The majority has misread the Notice of Civil Remedy filed by Fridman; the pleadings filed in this case; and the provisions of sections 627.727 and 624.155, Florida Statutes (2007). In addition, the majority has failed to apply the numerous decisions rendered by the Florida Supreme Court that hold that the jury in a UM case is to

- 8 -

determine the full extent of the injured victim's damages prior to the filing of any bad faith action. The majority has also misapplied the mootness doctrine. I strongly believe that Fridman had the right to have the jury determine the full extent of his damages, and he properly exercised that right. I do not believe it should be taken away by declaring the jury verdict void.

117 So. 3d at 21 (Sawaya, J., dissenting). Judge Sawaya described extensively how the majority's reasoning was contrary to this Court's precedent, including all three of the conflict cases, id. at 24-26, and concluded by discussing the ramifications of the Fifth District's opinion:

> As troubled as I am about what the majority has done to the verdict in this case, I am equally troubled by the precedent the majority has established. I believe that the majority decision will open the door to mischief by insurers who, with this court's precedent in hand, may sit back while the injured insured spends all of his time and effort preparing his case for trial and, after the injured insured has hemorrhaged his resources, confess judgment for policy limits and prevent the insured from proceeding to have the jury declare the full measure of his damages as a predicate for the insured's ensuing bad faith action. Then, the insured will have the arduous task of doing it all again when his bad faith action is filed, only to encounter the obstacles of dismissal or abatement of the bad faith issues until the damage issue is first resolved so the jury will not be prejudiced by the bad faith evidence when determining the measure of damages inflicted on the insured by the tortfeasor.
>
> The trial judge understood this case and what Safeco was trying to do with its motion to confess judgment. He properly denied that motion to allow the jury trial to proceed so the jury could speak the truth about the extent of Fridman's injuries.

Id. at 29-30.

## ANALYSIS

The conflict in this case involves two interrelated issues. The first issue, implicating the heart of UM and first-party bad faith litigation, is whether an insured is entitled to a determination of liability and the full extent of his or her damages in the UM case, before litigating the first-party bad faith claim. The second and critical interrelated issue is whether that determination of damages is then binding, as an element of damages, in a subsequent first-party bad faith cause of action, for which the insured has provided notice pursuant to section 624.155, against the same insurer. An ancillary issue pertaining to this case is whether a procedure such as the one employed by the trial court—entering the amount of the jury verdict in the final judgment and retaining jurisdiction to consider an amendment of the pleadings to add the bad faith claim—was erroneous. These questions are matters of law, which we review de novo. See Travelers Commercial Ins. Co. v. Harrington, 154 So. 3d 1106, 1108 n.2 (Fla. 2014).

We begin our analysis with a discussion of the applicable statutes and this Court's relevant case law, focusing in particular on the background of the statutory first-party bad faith claim and its relationship to the common law third-party bad faith claim. We then consider the interrelated issues at stake in this case by considering prior cases, including those that addressed how an appellate court has jurisdiction to review properly preserved claims of error in the UM verdict.

- 10 -

Finally, with these considerations in mind, we examine the trial court's actions in this case and determine whether it was proper to have entered a final judgment that included the amount of damages set forth in the jury verdict and purported to retain jurisdiction to determine Fridman's right to amend his complaint to add a bad faith cause of action. We conclude that the trial court did not err in employing this procedure.

### I. Statutory First-Party Bad Faith Claim

Until 1982, the only recognized bad faith cause of action was the common law third-party bad faith action. See Laforet, 658 So. 2d at 58 (citing Auto Mut. Indem. Co. v. Shaw, 184 So. 852, 859 (Fla. 1938)). The third-party bad faith cause of action permits the insured or the injured third party to sue an insurer for failing to settle within the policy limits.[2] See Macola v. Gov't Emps. Ins. Co., 953 So. 2d 451, 455 (Fla. 2006). In a third-party bad faith action, if the injured third party or the insured is successful in establishing that the insurer breached the duty of good faith in handling the claim, the plaintiff is entitled to recover the full extent of the

---

2. The injured third party is the ultimate beneficiary of the third-party bad faith claim—the real party in interest, akin to a "judgment creditor." See Thompson v. Commercial Union Ins. Co., 250 So. 2d 259, 264 (Fla. 1971). The injured third party may bring a cause of action pursuant to an assignment from the insured or in his or her own right as a third-party beneficiary. See Fidelity & Cas. Co. of N.Y. v. Cope, 462 So. 2d 459, 461 (Fla. 1985). If brought pursuant to an assignment, the injured third party stands in the shoes of the insured. See Roberts v. Carter, 350 So. 2d 78, 79 (Fla. 1977).

damages to which the insured was exposed, including an excess judgment. See, e.g., Berges v. Infinity Ins. Co., 896 So. 2d 665, 681-82 (Fla. 2004); Boston Old Colony Ins. Co. v. Gutierrez, 386 So. 2d 783, 784 (Fla. 1980).

In 1982, the Florida Legislature created a statutory first-party bad faith cause of action through the enactment of section 624.155. See § 624.155(1)(b)1, Fla. Stat. This provision extended the duty of an insurer to act in good faith in handling claims brought by its own insured under a UM policy and exposed the insurer to the consequences of failing to do so. § 624.155, Fla. Stat.

As a condition precedent to filing a civil action under section 624.155, "the [Florida Department of Financial Services] and the authorized insurer must have been given 60 days' written notice of the violation." § 624.155(3)(a), Fla. Stat. (2007); see also § 624.05(1), Fla. Stat. (2007). This notice is commonly referred to as the "civil remedy notice." The statute further provides that "[n]o action shall lie if, within 60 days after filing notice, the damages are paid or the circumstances giving rise to the violation are corrected." § 624.155(3)(d), Fla. Stat. (2007). This sixty-day window provides insurers with a final opportunity "to comply with their claim-handling obligations when a good-faith decision by the insurer would indicate that contractual benefits are owed." See Talat Enters., Inc. v. Aetna Cas. & Sur. Co., 753 So. 2d 1278, 1284 (Fla. 2000). However, if an insurer fails to respond to a civil remedy notice within the sixty-day window, there is "a

presumption of bad faith sufficient to shift the burden to the insurer to show why it did not respond." Imhof, 643 So. 2d at 619.

In 1990, the statute was amended to add subsection 624.155(7), specifying the damages recoverable under that statute as follows: "The damages recoverable pursuant to this section shall include those damages which are a reasonably foreseeable result of a specified violation of this section by the insurer and may include an award or judgment in an amount that exceeds the policy limits." Ch. 90-119, § 30, Laws of Fla. (emphasis added).

In McLeod v. Continental Insurance Co., 591 So. 2d 621, 626 (Fla. 1992), this Court considered the 1990 amendment as having clarified the legislative purpose with respect to damages. This Court concluded—in spite of the emphasized portion of the statute above—that an insured could not recover the amount of the excess judgment as an element of damages in a first-party bad faith claim, and instead could recover only those damages that were the "natural, proximate, probable, or direct consequence of the insurer's bad faith actions." Id.

Just months after this Court issued its opinion in McLeod, the Legislature enacted section 627.727(10), Florida Statutes (1992), to provide:

> The damages recoverable from an uninsured motorist carrier in an action brought under s. 624.155 shall include the total amount of the claimant's damages, including the amount in excess of the policy limits, any interest on unpaid benefits, reasonable attorney's fees and costs, and any damages caused by a violation of a law of this state.

- 13 -

The total amount of the claimant's damages is recoverable whether
caused by an insurer or by a third-party tortfeasor.

(Emphasis added.) The language of the amended section, which remains the same

today, clearly and unambiguously reflects the legislative intent that the damages in

section 624.155 bad faith actions shall include any amount in excess of the policy

limits. See § 627.727(10), Fla. Stat. (2015).

As this Court has recognized, "previous actions of this Court limiting the

relief afforded under section 624.155 based upon distinctions between first- and

third-party claims have been rebuked by the Legislature" by the 1992 enactment.

Allstate Indem. Co. v. Ruiz, 899 So. 2d 1121, 1128 n.2 (Fla. 2005). Indeed,

section 624.155 itself does not distinguish between first- and third-party bad faith

actions and contains the same language that has been used in the third-party bad

faith context. See id. at 1126. Consequently, first-party bad faith claims under

section 624.155 should be treated in the same manner as third-party bad faith

claims.[3] Importantly, in both first- and third-party bad faith actions, an element of

---

3. Indeed, the Note for use on the current standard jury instruction reflects
the same. The pertinent instruction and Note read as follows, in relevant part:

404.4 INSURER'S BAD FAITH (FAILURE TO SETTLE)

Bad faith on the part of an insurance company is failing to settle
a claim when, under all the circumstances, it could and should have
done so, had it acted fairly and honestly toward [its policyholder] [its

damages includes any amount in excess of the policy limits.  See § 627.727(10),

Fla. Stat.

## II.  Intertwined Nature of UM Verdict & First-Party Bad Faith Action

## A.  Entitlement to a Determination of Liability & Full Extent of Damages

The Fifth District and Safeco both recognize that an element of damages

within the first-party bad faith case would be any damages in excess of the policy

limits for the injuries arising from the automobile accident.  However, the Fifth

District decided, and Safeco argues, that the determination of the full extent of

damages can and should be adjudicated in the subsequent bad faith case—rather

than in the UM action—because Safeco's decision to tender the policy limits

rendered the underlying UM action moot.  While the Fifth District held that

Fridman did not <u>need</u> to obtain a jury verdict in excess of the UM policy limits in

the UM case in order to subsequently file a first-party bad faith action, the

pertinent question is whether the insured is <u>entitled</u> to that determination.  Four

---

insured] [an excess carrier] and with due regard for [his] [her] [its]
[their] interests.

Notes on Use for 404.4

1.  Instruction 404.4 does not distinguish statutory claims from
common law claims or first party claims from third party claims.  <u>See</u>
<u>State Farm Mutual Automobile Insurance Co. v. LaForet</u>, 658 So. 2d
55 (Fla. 1995).

Fla. Std. Jury. Instr. (Civ.) 404.4.

- 15 -

cases from this Court—including the three cases with which the Fifth District's decision conflicts—make clear that the answer is that the insured <u>is</u> entitled to a jury determination of the amount of damages in the UM action.

In the first case, <u>Blanchard</u>, 575 So. 2d at 1290-91, this Court addressed a certified question from the Eleventh Circuit Court of Appeals regarding whether the statutory claim for bad faith under section 624.155 had to be asserted in the original action against the insurer for UM benefits. This Court answered the certified question in the negative, reasoning that if an uninsured motorist is not liable for damages, then the insurer has not acted in bad faith in refusing to settle the claim; therefore, the insured's underlying action for insurance benefits against the insurer must be first resolved in favor of the insured before the cause of action for bad faith can accrue. <u>Id.</u> at 1291. As this Court made clear in <u>Blanchard</u>, "[a]bsent a determination of the existence of liability on the part of the uninsured tortfeasor <u>and the extent of the plaintiff's damages</u>, a cause of action cannot exist for a bad faith failure to settle." <u>Id.</u> (emphasis added). <u>Blanchard</u> thus clearly supports the conclusion that the determination of liability and full extent of the insured's damages must be determined before litigating the bad faith action.

In the second case, <u>Imhof</u>, 643 So. 2d at 617, this Court addressed the issue of whether an action for bad faith damages pursuant to section 624.155(1)(b)1 is barred by <u>Blanchard</u>, where the complaint in the bad faith action fails to allege that

- 16 -

there has been a determination of the extent of the plaintiff's damages as a result of the uninsured tortfeasor's negligence.  This Court clarified that while bad faith is presumed when the insurer fails to respond within the sixty-day window after the civil remedy notice is filed, Blanchard requires a determination of damages in order to state a bad faith claim.  Imhof, 643 So. 2d at 619.  This Court held that a bad faith complaint that fails to allege that there has been a determination of the full extent of the insured's damages as a result of the uninsured tortfeasor's negligence should be dismissed.  Id.  Imhof further supports our conclusion that the insured is entitled to a determination of liability and the full extent of his or her damages before litigating the first-party bad faith claim.  Indeed, without a determination of damages, Imhof requires the bad faith complaint to be dismissed.

This Court echoed this point again in the third case—Vest, 753 So. 2d at 1275.  During that bad faith litigation, the insurer approved a settlement between the insured, Vest, and the tortfeasor, and the insurer paid Vest the UM policy limits, after which the trial court entered summary judgment on the bad faith claim in favor of the insurer.  Id. at 1272.  The First District affirmed the trial court's grant of summary final judgment in favor of the insurer.  Vest v. Travelers Ins. Co., 710 So. 2d 982, 984 (Fla. 1st DCA 1998), quashed, 753 So. 2d 1270 (Fla. 2000).

When the case reached this Court, we quashed the First District's decision and clarified that Blanchard means that the " 'determination of the existence of liability on the part of the uninsured tortfeasor and the extent of the [insured's] damages' are elements of a cause of action for bad faith." Vest, 753 So. 2d at 1275 (quoting Blanchard, 575 So. 2d at 1291). Once those elements exist, there is no impediment as a matter of law to the recovery of damages for bad faith starting from the time of a proven violation. Id. Vest thus further supports our conclusion that the insured is entitled to a determination of liability and the full extent of damages before litigating the bad faith cause of action.

In the fourth case, this Court in Laforet, 658 So. 2d 55, considered the amount of damages to which an insurer would be exposed in a bad faith action, in addressing whether section 627.727(10) was retroactive. This Court held that the statute could not be applied retroactively because the Legislature "has now determined that damages in first-party bad faith actions are to include the total amount of a claimant's damages, including any amount in excess of the claimant's policy limits without regard to whether the damages were caused by the insurance company"—damages that are, in substance, a penalty. Id. at 60. This Court noted that if section 627.727(10) had been applicable in that case, "under the retroactive application of the new statute, [the insurer] was liable for the entire excess judgment awarded to the Laforets in their original [UM] case." Id. at 57. Thus,

Laforet recognizes that the determination of the full extent of damages is properly made in the UM case and not litigated in the bad faith action.

Nothing in our precedent suggests that the eventual tendering of the policy limits renders the UM case moot. We have already addressed this same scenario in the common law third-party bad faith context, holding that "the tender of the policy limits to the insured when the underlying tort action is still pending does not eliminate the underlying tort action or the insured's exposure to an excess verdict." Macola, 953 So. 2d at 458; see also Whritenour v. Thompson, 145 So. 3d 870, 873-74 (Fla. 2d DCA 2014) ("A plaintiff must be allowed to proceed to trial and liquidate her damages before bad faith becomes an issue. If a plaintiff chooses to pursue a trial, the trial court cannot compel her to accept the defendant's policy limits.") (citation omitted). Analogously, in the statutory first-party bad faith context, the tender of the policy limits to the insured does not eliminate the UM action or the insurer's exposure to an excess verdict.

Additionally, the UM trial involves more than just a determination of whether the insurer owes the insured the UM policy limits. Rather, the UM trial also includes a determination of whether the uninsured or underinsured driver is liable and the full extent of the insured's damages. As Judge Sawaya cogently explained:

> The purpose of UM litigation is to determine the damages
> caused by a negligent tortfeasor. It is, in essence, a personal injury

- 19 -

action filed against the insured's insurer, who steps into the shoes of the tortfeasor, and the litigation proceeds as if the suit was filed against the tortfeasor. See Allstate Ins. Co. v. Boynton, 486 So. 2d 552 (Fla. 1986). The relevant evidence relates to how the accident happened, who was at fault, how the injuries occurred, the extent of those injuries, how those injuries were treated and are to be treated in the future, the cost of the treatment, lost wages, and all of the other damage issues generally present in personal injury litigation. Thus, absent coverage issues, causation and damages to the injured insured are the primary focus of the UM litigation.

Fridman, 117 So. 3d at 27 (Sawaya, J., dissenting).

Judge Sawaya further aptly described why the UM action is not moot merely because the insurer has tendered the policy limits:

"An issue is moot when the controversy has been so fully resolved that a judicial determination can have no actual effect. A case is 'moot' when it presents no actual controversy or when the issues have ceased to exist." Godwin v. State, 593 So. 2d 211, 212 (Fla. 1992) (citations omitted). The damage issue is not moot because a verdict in excess of the policy limits is evidence and a recoverable measure of damages in the subsequent bad faith action, and Fridman had the right to seek such a verdict in the UM case.

   Moreover, an exception to the mootness doctrine provides that "an otherwise moot case will not be dismissed if collateral legal consequences that affect the rights of a party flow from the issue to be determined." Id. As previously indicated, the courts have repeatedly held that a determination of the extent of the damages is a prerequisite to the bad faith action. See Vest[, 753 So. 2d at 1276]; Blanchard[, 575 So. 2d at 1291]; [Progressive Select Ins. Co. v.] Shockley[, 951 So. 2d 20 (Fla. 4th DCA 2007)]. A collateral legal consequence of the UM proceedings is that the confessed judgment in the amount of the policy limits, which has been foisted upon Fridman against his will by Safeco in an attempt to deprive Fridman of his right to a jury trial, is not a determination of the extent of the insured's damages.

Id. at 28-29.

We agree with Judge Sawaya's reasoning that the amount of damages in the UM case does not become moot by virtue of an insurer's "confession of judgment" and tendering of the policy limits. Such a position as that taken by the Fifth District majority would "countenance the actions of an insurer that confesses judgment at the last hour in an effort to avoid a trial that would reveal, through the jury's verdict, the true extent of the insured's injuries and provide a basis to award damages in the inevitable bad faith action the insurer foresaw on the horizon." Id. at 29.

Certainly, the insured is not obligated to obtain the determination of liability and the full extent of his or her damages through a trial and may utilize other means of doing so, such as an agreed settlement, arbitration, or stipulation before initiating a bad faith cause of action. See, e.g., Dadeland Depot, Inc. v. St. Paul Fire & Marine Ins. Co., 945 So. 2d 1216, 1234-35 (Fla. 2006). But the availability of other alternatives does not change the insured's entitlement to a determination of liability and the full extent of damages in the first instance. Therefore, for all these reasons, we conclude that an insured is entitled to a determination of liability and the full extent of his or her damages in the UM case prior to filing a first-party bad faith action.

## B. Binding Effect of UM Verdict in First-Party Bad Faith Trial

Having reached this conclusion, an interrelated question is whether the determination of damages that is reflected in the UM verdict is binding, as an element of damages, in the subsequent bad faith action. The key to answering this question is whether the insurer has a right to appellate review of properly preserved claims of error in the determination of damages obtained in the UM action.

First, it is obvious that the UM verdict to which the insured is entitled must be binding in the bad faith action. Because a determination of the full extent of the insured's damages is one of the prerequisites to a bad faith cause of action, to preclude a UM verdict in excess of the policy limits from being used in the bad faith case would force the parties to relitigate the issue of damages a second time prior to the bad faith trial. This would be an obvious waste of judicial and litigant resources. It would also result in serious, unintended consequences, such as "running the almost-certain risk of inconsistent verdicts; potentially raising comity issues between state and federal courts; creating a discrepancy . . . between first- and third-party bad faith claims; placing an inexplicable burden on plaintiffs to prove their cases twice; and causing a great deal of judicial inefficiency." Batchelor v. Geico Cas. Co., No. 6:11–cv–1071–Orl–37GJK, 2014 WL 3906312, at *4 (M.D. Fla. June 9, 2014).

If the amount of the UM verdict is not binding as an element of damages in the bad faith litigation, it would allow the insurer—or the insured, if the verdict were less than anticipated—a second bite at the proverbial apple. As the Fourth District Court of Appeal stated in GEICO General Insurance Co. v. Paton, it would be "such bad policy" that there is not "even a hint of its existence in any case the Supreme Court has decided in this area." 150 So. 3d 804, 807 (Fla. 4th DCA 2014). Where the insurer "participated fully in the first trial with an opportunity to challenge the plaintiff's evidence and a powerful motive to suppress the amount of damages," Florida's "policy is not to give multiple bites at the same apple absent some legal infirmity in the first trial." Id.

In GEICO Casualty Co. v. Barber, Judge Sawaya explained that utilizing the UM and bad faith statutes "as a charade whereby insurers are allowed, through the expedient of a fictional confession of judgment made years into the litigation, to push and pull their insureds from one lawsuit to another only to require the insureds to try the same damage issues all over again" would "def[y] all logic and common sense, contravene[] the fundamental principles underlying the UM and bad faith statutes, and improperly ignore[] the last chance provisions of section 624.155(3)(a), thus rendering that statute virtually meaningless." 147 So. 3d 109, 117-18 (Fla. 5th DCA 2014) (Sawaya, J., dissenting). Accordingly, the Fifth District's decision here—which authorizes this exact type of conduct—incentivizes

insurers to undergo tactics that are adverse to the legislative intent behind section 627.727(10). Because we have concluded that the insured is entitled to a determination of the full extent of damages in the UM action, it follows that such a determination is binding in the subsequent bad faith action against the same insurer.

The same is true when the insured attempts to relitigate the issue of damages in the bad faith case, as a federal court recently properly found. See Wiggins v. Allstate Prop. & Cas. Ins. Co., No. 13-23354-CIV, 2015 WL 1396583, at *4 (S.D. Fla. Mar. 6, 2015), adopted by No. 13-CV-23354, 2015 WL 1402970 (S.D. Fla. Mar. 18, 2015). In that case, it was actually the insurer that contended that "recent Court rulings make clear that in Florida, a verdict in an underlying UM action, determines the damages available to a claimant in a subsequent bad faith action against the insurer." Id. at *2. Truly, this is an appropriate example of the classic adage "what is good for the goose is good for the gander."

Nevertheless, Safeco argues that the determination of damages reflected in the UM verdict cannot fix the amount of damages in the subsequent bad faith cause of action because this determination of damages in excess of the policy limits is not and cannot be subject to appellate review of trial court errors. This inability to review the UM verdict for trial court error, Safeco argues, creates a procedural due process issue. But Safeco's position is somewhat inconsistent with its own actions

in this case because Safeco did, in fact, appeal the UM verdict for trial error to the Fifth District.

Of course, if the parties were actually unable to appeal the UM verdict that fixed damages in the bad faith case, a due process concern—or at least a question of basic fairness—could arise. However, in this case, the Fifth District nowhere indicated that it was without authority to review the jury verdict for trial errors and Safeco had not made that argument below as a reason to vacate the jury verdict. Instead, Safeco appealed the denial of its motion for mistrial and post-trial motions. And in another UM case, the Fifth District reviewed a substantial UM jury verdict for error. See Nationwide Mut. Fire Ins. Co. v. Darragh, 95 So. 3d 897, 898-99 (Fla. 5th DCA 2012) (reviewing a $3.99 million verdict in an appeal brought by Nationwide for errors in the damage award, where the UM policy limit was $200,000; reversing the portion of the verdict related to future economic damages; and remanding for a new trial to determine future economic damages).

We agree with Safeco that there must be an opportunity for both parties to obtain appellate review of any timely raised claims of error in the determination of damages obtained in the UM trial, for the very reason that it becomes binding as an element of damages in the subsequent bad faith case. However, we do not agree— nor does Fridman suggest—that the appellate court is without jurisdiction to review the UM verdict.

District courts of appeal have appellate jurisdiction under article V, section 4(b)(1), of the Florida Constitution. While district courts do not have jurisdiction over all non-final orders, in this case, the final judgment including the determination of the full extent of damages was properly within the jurisdiction of the Fifth District. Further, once the trial court denied Safeco's motion for a new trial, rejecting a claim of an excessive verdict, that order also became subject to appellate review—as Safeco evidently understood when it filed its appeal in this case.

We therefore respectfully disagree with the view that a district court lacks jurisdiction to review an excess verdict, if the amount of damages was not included within the final judgment. See Geico Gen. Ins. Co. v. Bottini, 93 So. 3d 476, 478 (Fla. 2d DCA 2012) (Altenbernd, J. concurring). Just as Judge Gross has expressed, writing for the Fourth District in Paton, we also do not "discern the constitutional conundrum" under these circumstances. 150 So. 3d at 808. Specifically,

> [b]ecause the damages in the first trial fixed the amount of bad faith damages and an order denying a motion for new trial could have addressed damages in excess of $100,000, an appeal after the final judgment in the first trial directed at the total amount of damages thus would have fallen within the constitutional parameters of the jurisdiction of this Court as an appeal from a "final judgment[ ] or order[ ]" of the trial court. Art. V, § 4(b)(1), Fla. Const.

- 26 -

<u>Id</u>.  Further, as Judge Gross recognized, "[t]his approach conserves judicial resources and best serves the procedure contemplated by <u>Blanchard</u>."  <u>Id</u>.[4]

As Federal District Court Judge Dalton explained in <u>Batchelor v. Geico Casualty Co.</u>, Florida's district courts have powers of plenary review that allow review of a UM verdict for potential errors:

> [O]rders granting remittiturs are reviewed for abuse of discretion; on review, the appellate courts must look at whether the verdict was so high as to be against the manifest weight of the evidence.  <u>See, e.g.</u>, <u>Normius v. Eckerd Corp.</u>, 813 So. 2d 985, 988 (Fla. 2d DCA 2002).  Similarly, orders granting judgment notwithstanding the verdict are reviewed de novo; there, appellate courts must look to whether any reasonable jury could have rendered the verdict.  <u>See, e.g.</u>, <u>Duclos v. Richardson</u>, 113 So. 3d 1001, 1003-04 (Fla. 1st DCA 2013).  In both of these instances, even though there is a judgment that is different than the verdict, the appellate courts can and must review the verdict and the evidence supporting the verdict to determine whether the judgment was appropriate.

2014 WL 3906312, at *2 (footnote omitted).[5]

---

4.  The insurer sought review of <u>Paton</u> in this Court.  Because <u>Paton</u> also involved the issue of whether the parties may rely on the determination of damages made in the UM case in the subsequent first-party bad faith action between the same insurer and insured, we stayed review of <u>Paton</u> pending disposition of this case.  <u>Geico Gen. Ins. Co. v. Paton</u>, No. SC15-63 (Fla. Sup. Ct. order filed Apr. 9, 2015).

5.  This issue of the binding effect of the underlying verdict for damages in excess of the policy limits and the ability to appeal the verdict for errors appears to have created concerns for Federal District Court judges in Florida.  At least four Federal District Court judges—Judges Kovachevich, Presnell, and Williams, in addition to Judge Dalton in <u>Batchelor</u>—have concluded that the jury determination of the full extent of the damages in the UM action becomes a binding element of the damages recoverable in the subsequent first-party bad faith claim, with the

- 27 -

Alternatively, other trial courts have entered a partial final judgment for the amount of damages, recognizing the right to appellate review of a partial final judgment.  See, e.g., Safeco Ins. Co. of Ill. v. Rader, 132 So. 3d 941, 948 (Fla. 1st

---

issue of the right to appeal the underlying verdict becoming central.  See Wiggins, 2015 WL 1396583, at *3 (finding that the initial action between the insurer and the insured fixes the amount of damages in the first-party bad faith action and rejecting the plaintiff's argument that there was no right to appeal from the underlying UM judgment); Cadle v. Geico Gen. Ins. Co., No. 6:13-cv-1591-Orl-31GJK, 2014 WL 4983791, at *2 (M.D. Fla. Oct. 6, 2014) (expressing some concern about the scope of review in considering alleged errors in the UM verdict that exceeds the policy limits but stating that "the current state of law in Florida does not support [the insurer]'s position" that the UM jury verdict is not binding as a measure of damages in the bad faith action); Bottini v. Geico Gen. Ins. Co., No. 8:13–CV–365–T–17AEP, 2014 WL 4749054, at *12 (M.D. Fla. Sept. 23, 2014) (concluding that the amount of damages is necessarily determined in the underlying UM action, and that there was no failure of due process because the insurer had the opportunity to and did raise the issue of excessive damages by post-trial motions and on appeal).  Accord Thorne v. State Farm Mut. Auto. Ins. Co., No. 8:14–CV–827–T–17AEP, 2015 WL 809530, at *6 (M.D. Fla. Feb. 25, 2015); Lawton-Davis v. State Farm Mut. Auto. Ins. Co., No. 6:14–cv–1157–Orl–37GJK, 2014 WL 6674458, at *3 (M.D. Fla. Nov. 24, 2014).

On the other hand, in King v. Government Employees Insurance Co., No. 8:10-cv-977-T-30AEP, 2012 WL 4052271 (M.D. Fla. Sept. 13, 2012), aff'd by 579 Fed. Appx. 796, 802-803 (11th Cir. 2014), Judge Moody determined that the underlying verdict in excess of the policy limits was not binding because it had not been reviewed on appeal.  And in Harris v. Geico General Insurance Co., 961 F.Supp. 2d 1223 (S.D. Fla. 2013), aff'd by 619 Fed. Appx. 896 (11th Cir. 2015), Judge Ryskamp concluded that the jury verdict in the underlying UM case was not the proper measure of damages in the first-party bad faith action. In both cases, on appeal, the Eleventh Circuit Court of Appeals declined to address the issue of whether the excess verdict in the underlying UM action was binding as to damages in the subsequent first-party bad faith action because it affirmed the decision that the insurer was found by the jury not to have acted in bad faith.  King, 579 Fed. Appx. 796 at 802-803; Harris, 619 Fed. Appx. at 898.

- 28 -

DCA 2014). As set forth in Florida Rule of Appellate Procedure 9.110(k), partial final judgments are reviewable either on appeal from the partial final judgment or on appeal from the final judgment in the entire case. Fla. R. App. P. 9.110(k). A partial final judgment, other than one that disposes of an entire case as to any party, is one that disposes of a separate and distinct cause of action that is "not interdependent with other pleaded claims." Jay A. Yagoda, Early Appellate Remedies: Partial Final Judgments, 87 Fla. B.J. 30 (2013). Any of these views reflect that the parties can and should be afforded appellate review of the UM verdict for properly preserved trial court error.

We also disagree with the view taken by the Second District Court of Appeal in Bottini, in which it held that "even if Geico were correct that errors may have affected the jury's computation of damages," any errors in the jury's computation of damages were "harmless" in the "context of [the] case and the amount of the judgment." 93 So. 3d at 477. We reject the suggestion that errors in the computation of the UM verdict are necessarily harmless where the damages reflected in the UM verdict are significant relative to the UM policy limits because the damages will eventually become part of the subsequent bad faith case. In fact, that is precisely what occurred in the bad faith litigation following Bottini. When the Bottini litigants proceeded with the bad faith case, Judge Kovachevich came to the conclusion that the amount of damages is necessarily determined in the

underlying UM action and also determined that the insurer failed to pursue further relief to review the Second District's decision.  See Bottini v. Geico Gen. Ins. Co., No. 8:13–CV–365–T–17AEP, 2014 WL 4749054, at \*12 (M.D. Fla. Sept. 23, 2014).

For all these reasons, we conclude that the determination of damages obtained in the UM action becomes a binding element of damages in the subsequent bad faith litigation against the same insurer and that the parties have the opportunity to appeal timely-raised errors in the UM verdict.  We now turn to this case.

### III.  This Case

Sixty days after Fridman filed his civil remedy notice without action on Safeco's part, a presumption of bad faith arose.  Almost three years later, on the eve of trial, Safeco finally tendered the policy limits and moved for entry of a "confession of judgment."  Even if Fridman had chosen to accept Safeco's tendering of the policy limits after years of litigating, Fridman would still, at some point, need to obtain a determination of the full extent of his damages, including any amount in excess of the policy limits, if he planned to pursue his first-party bad faith claim.  He appropriately chose to obtain this determination in the UM action that he had filed and which had been proceeding years before the offer of the policy limits was made.  Fridman was entitled to do so.

Even before the complaint was filed, Safeco knew that Fridman's case against it was not limited to the issue of its liability under the UM policy:

> As the court in <u>Vest</u> indicated, Fridman was proceeding in a claim for bad faith and notified Safeco of his claim prior to filing the UM case. There is no way that Safeco can argue, and indeed it does not argue, that it was not put on notice prior to the UM suit being filed of Fridman's bad faith claim. Moreover, when Safeco did tender its policy limits and attempt to confess judgment years into the litigation, and after it requested a continuance of the scheduled trial date, Fridman argued that he had a right to seek a judgment in excess of the policy limits in accordance with section 627.727(10) for the bad faith action he planned to file.

<u>Fridman</u>, 117 So. 3d at 23 (Sawaya, J., dissenting).

Safeco's conduct of confessing judgment on the eve of trial would prevent Fridman from obtaining a jury award that Safeco knew would be used in Fridman's subsequent first-party bad faith action. <u>See</u> <u>Barber</u>, 147 So. 3d at 117-18 (Sawaya, J., dissenting). If Fridman had to then relitigate the issue of his damages, it would be unduly and unnecessarily burdensome to him, and it would reward Safeco for its conduct in delaying a tender of the policy limits. For those reasons, the trial court did not err in denying the motion to confess judgment and allowing the UM claim to be litigated. Also, by including the amount of the jury verdict in the final judgment, the trial court did precisely what Judge Gross described in <u>Paton</u> as a "preferable approach," in which execution issues only for the policy limits but the

- 31 -

total amount of the damages is included in the final judgment. 150 So. 3d at 808 n.1.[6]

Additionally, the trial court did not err by retaining jurisdiction to determine Fridman's right to amend the complaint to add a claim for bad faith. The trial court's approach is consistent with our precedent in Ruiz, 899 So. 2d at 1130, which allows a bad faith cause of action to be abated.

In Ruiz, this Court determined that there was no basis to apply different rules as to the discoverability of material such as the insurer's claim file and other related materials to third-party bad faith actions and first-party bad faith actions. This Court accordingly held that all materials contained in the underlying UM claim and related litigation file material created up to the date of resolution of the underlying matter should be produced in a first-party bad faith action. Id. at 1129-30.

We explained that when the claims are brought simultaneously, certain documentation relevant to the bad faith action is not discoverable until the underlying claim for benefits has been resolved, after which it would be

_____

6. However, we do not perceive a need for a rule codifying this procedure, as suggested by Judge Gross in Paton. See Paton, 150 So. 3d at 808 n.1 ("The Supreme Court might well clarify that this is the preferable approach by adopting a rule requiring final judgments in uninsured motorist suits between an insured and the insurer to include specific findings on the total amount of damages, even though execution would issue for only the policy limits.").

discoverable just as in a third-party bad faith claim. Id. at 1130. To resolve the issue of an insured having an unfair advantage in the underlying negligence action, we advised that "the courts should employ existing tools, such as the abatement of actions and in-camera inspection, to ensure full and fair discovery in both causes of action." Id.

The Fourth District held in State Farm Mutual Automobile Insurance Co. v. Tranchese, 49 So. 3d 809, 810 (Fla. 4th DCA 2010), that where a bad faith action is joined with a claim for UM benefits, "the appropriate step is to abate the bad faith action until coverage and damages have been determined." Further, as the First District Court of Appeal has observed, "the trial court has authority to abate the statutory claims, rather than to dismiss them, if it appears to the court that abatement would be in the interest of judicial economy." Vanguard Fire & Cas. Co. v. Golmon, 955 So. 2d 591, 595 (Fla. 1st DCA 2006).

While this Court noted in Vest that a bad faith claim is premature if it is brought before a determination of damages is obtained, 753 So. 2d at 1276, we agree with the Fourth District that the statement in Vest was made in the context of determining whether summary judgment versus dismissal was appropriate. See Safeco Ins. Co. of Ill. v. Beare, 152 So. 3d 614, 617 (Fla. 4th DCA 2014). We reaffirm that our decision in Ruiz made clear that abatement is an appropriate procedural device.

If abatement is permitted when the bad faith action is brought simultaneously with the UM claim, then it follows that a trial court may also reserve jurisdiction to allow an insured to formally amend his or her complaint to add the bad faith claim after the conclusion of the UM proceedings. Indeed, this procedure has been used in other cases. In Rader, in which the trial court entered a partial final judgment in the underlying UM case, the First District likewise approved the procedure of allowing the insured to subsequently amend the complaint to add the bad faith cause of action. 132 So. 3d at 948. Thus, the procedure employed by the trial court here—retaining jurisdiction to determine the insured's right to amend the pleadings to add a bad faith claim—is appropriate and consistent with our precedent in first-party bad faith cases.

Finally, we make clear that the insurer has the full opportunity to defend its actions related to its handling of the insured's UM insurance claim when litigating the bad faith action. In other words, just because the amount of the UM verdict is a binding element of damages under section 627.727(10) in the bad faith case, the insurer is not precluded from explaining its actions in failing to pay the policy limits when demanded and presenting its case for why it did not act in bad faith in the handling of the UM claim.

**CONCLUSION**

We conclude that an insured is entitled to a jury determination of liability and the full extent of his or her damages, which may be in excess of the policy limits, in the underlying UM case, prior to litigating a first-party bad faith cause of action. This determination is then binding in the subsequent bad faith action, provided the parties have had the opportunity for appellate review of any trial errors that were timely raised. An approach such as the one taken by the trial court in this case—that is, going forward with the trial, including the verdict amount in the final judgment, and reserving jurisdiction to consider a motion to amend to add the bad faith cause of action—appropriately addresses how the parties can review that jury determination of the extent of the damages for error prior to it being used in the subsequent bad faith litigation as an element of damages. Accordingly, we quash the decision of the Fifth District and remand for the Fifth District to consider the other appellate issues Safeco raised in the appeal to the Fifth District.[7]

It is so ordered.

LABARGA, C.J., and LEWIS, QUINCE, and PERRY, JJ., concur.
CANADY, J., dissents with an opinion, in which POLSTON, J., concurs.

---

7. The two trial-related errors raised by Safeco before the Fifth District and this Court, that neither we nor the Fifth District have addressed, are: (1) whether the trial court erred in denying Safeco's motion for remittitur; and (2) whether the trial court erred in denying Safeco's motions for mistrial and a new trial for improper arguments made by Fridman's trial counsel.

- 35 -

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND IF FILED, DETERMINED.

CANADY, J., dissenting.

Under Article V, section 3(b)(3) of the Florida Constitution, "[t]his Court may only review a decision of a district court of appeal that expressly and directly conflicts with a decision of another district court of appeal or the Supreme Court on the same question of law." Jenkins v. State, 385 So. 2d 1356, 1359 (Fla. 1980). Here, the majority finds conflict between cases in which the causes of action are not the same and the courts address and resolve different legal issues. Because the Fifth District Court's decision does not conflict with Blanchard, Imhof, or Vest, I dissent.

In the instant case, "the only cause of action before the trial court was Fridman's UM claim." Fridman, 117 So. 3d at 19. Safeco tendered the UM policy limits, and the court—over Safeco's objection—proceeded to trial, after which the jury found $1 million in damages to Fridman. The trial court reserved jurisdiction to award bad faith damages should Fridman pursue and prevail on such a claim. On review, the district court reversed, holding that Fridman was correct not to include a bad faith claim in the UM action against Safeco. Thus, the district court determined that "while in ordinary circumstances an insured must obtain a judgment in excess of policy limits before prosecuting a first party bad faith claim, it was the establishment of the fact that such damages were incurred and not their

- 36 -

precise amount that formed the basis for a <u>subsequent</u> bad faith cause of action." <u>Id.</u> at 20 (emphasis added).

In contrast to the case before the Court, which addressed a UM suit, the three alleged conflict cases—<u>Blanchard</u>, <u>Imhof</u>, and <u>Vest</u>—addressed issues in first-party actions for bad faith against an insurer. <u>Blanchard</u> held that "an insured's underlying first-party action for insurance benefits against the insurer necessarily must be resolved favorably to the insured before the cause of action for bad faith in settlement negotiations can accrue." 575 So. 2d at 1291. The Court explained that "[a]bsent a determination of the existence of liability on the part of the uninsured tortfeasor and the extent of the plaintiff's damages, a cause of action cannot exist for a bad faith failure to settle." <u>Id.</u> In <u>Imhof</u>, the plaintiff settled his UM claim with the tortfeasor and then sued his insurer for bad faith for failure to settle. 643 So. 2d at 618. Answering a certified question, this Court held that "[n]either <u>Blanchard</u> nor section 624.155(2)(b) requires the allegation of a <u>specific amount</u> of damages" in a bad faith claim. <u>Id.</u> Finally, in <u>Vest</u> this Court again addressed an issue regarding damages recoverable in a bad faith action against an insurer. 753 So. 2d at 1272. The Court held that "a claim for bad faith pursuant to section 624.155(1)(b)1[.] is founded upon the obligation of the insurer to pay when all conditions under the policy would require an insurer exercising good faith and fair dealing towards its insured to pay. This obligation on the part of an insurer

- 37 -

requires the insurer to timely evaluate and pay benefits owed on the insurance policy." Id. at 1275.

The three alleged conflict cases all address issues regarding bad faith claims against insurers for failing to settle. In this case, however, the petitioner did not bring or argue a bad faith cause of action in the trial court. And the district court's opinion acknowledges that there is no bad faith claim in the case. Moreover, the district court's statement that a determination of the dollar amount of the damages is not required to establish the extent of damages for a bad faith suit is congruent with this Court's decisions in the alleged conflict cases. Because the alleged conflict cases are factually distinguishable and their holdings do not conflict with the district court's decision in this case on the same question of law, this Court lacks jurisdiction. Accordingly, I would discharge the case on that basis.

POLSTON, J., concurs.

Application for Review of the Decision of the District Court of Appeal - Direct Conflict of Decisions

    Fifth District - Case No. 5D12-428

    (Orange County)

Michael Stanley Rywant, Andrew Frank Russo, Kerry Chadwick McGuinn, Jr., and Carla Maria Sabbagh of Rywant, Alvarez, Jones, Russo & Guyton, P.A., Tampa, Florida,

    for Petitioner

Robert E. Vaughn, Jr. of the Law Office of Glenn G. Gomer, Tampa, Florida; Anthony John Russo of Butler Weihmuller Katz Craig, LLP, Tampa, Florida; and Mark Steven Shapiro of Akerman LLP, Miami, Florida,

for Respondent

Jack Roy Reiter of Gray Robinson, P.A., Miami, Florida,

for Amici Curiae The American Insurance Association, The Property Casualty Insurers Association of America, The National Association of Mutual Insurance Companies, and The Florida Insurance Council