# DISTRICT COURT OF APPEAL OF FLORIDA
## SECOND DISTRICT

————————————————

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,

Appellant,

v.

CHARLES FINSON,

Appellee.

No. 2D2022-2280

————————————————

April 17, 2024

Appeal from the Circuit Court for Pinellas County; Cynthia Newton, Judge.

Warren B. Kwavnick of Cooney Trybus Kwavnick Peets, Fort Lauderdale, for Appellant.

Brian J. Lee of Morgan & Morgan, Jacksonville, for Appellee.


ATKINSON, Judge.

State Farm Mutual Automobile Insurance Company ("State Farm") appeals a final judgment entered in favor of its insured, Charles Finson, following a jury verdict awarding Mr. Finson damages on his claim for underinsured motorist ("UM") benefits. We reverse because the trial court entered judgment against State Farm for an amount that exceeds the insurance policy limits even though there has been no judicial

determination that State Farm acted in bad faith. On remand, the trial court must enter a corrected judgment in an amount within the policy limits, but it may reference the net verdict amount as the measure of damages should Mr. Finson ultimately prevail on his bad faith claim.

## Background

Mr. Finson sustained injuries as a result of an automobile accident with an underinsured motorist. He filed a one-count complaint against State Farm, his insurer, seeking UM benefits pursuant to his insurance policy, of which the policy limits were $100,000. State Farm admitted coverage but otherwise denied Mr. Finson's claim. The parties proceeded to a jury trial on the issues of causation and damages, at which the jury found that the automobile accident was the legal cause of Mr. Finson's injury and awarded him damages for past and future medical expenses and past and future pain and suffering in the total amount of $1,094,192.18.

After trial, State Farm filed a motion to conform the final judgment to the $100,000 policy limits, arguing that the judgment could not exceed the policy limits absent a judicial determination of bad faith. Mr. Finson filed a motion for leave to amend his complaint to add a bad faith claim pursuant to section 624.155, Florida Statutes (2018). The trial court granted Mr. Finson's motion for leave to amend but denied State Farm's motion to conform the final judgment to the policy limits. The trial court then entered a final judgment in favor of Mr. Finson in the amount of $1,052,593.22 (the net verdict amount after setoffs) and provided for the accrual of postjudgment interest. However, the trial court limited execution on the judgment to $100,000, "which represents the sum of coverages provided under the policy," and any postjudgment

2

interest accruing on that amount, and reserved jurisdiction to address Mr. Finson's pending bad faith claim.

## Analysis

State Farm correctly contends on appeal that the trial court erred by entering a final judgment against it for the net amount of the jury verdict because that amount exceeds the policy limits and there was no judicial determination that it acted in bad faith. *See Nationwide Mut. Fire Ins. v. Voigt*, 971 So. 2d 239, 240–43 (Fla. 2d DCA 2008) (reversing and remanding for "entry of the maximum judgment that can be entered under the terms and conditions of the insurance policy" and granting fees as a sanction after the insured's counsel "convinced the trial court to enter a judgment for the entire [net] amount of the jury's verdict without any allegation in the pleadings, much less a factual determination, that Nationwide had committed bad faith"); *State Farm Mut. Auto Ins. v. St. Godard*, 936 So. 2d 5, 9 (Fla. 4th DCA 2006) ("[I]n the absence of a judicial finding of bad faith, in an action against an insurer for damages under a policy of insurance, a final judgment against the insurer cannot exceed the stated policy limits."); *Gov't Emps. Ins. v. Robinson*, 581 So. 2d 230, 231 (Fla. 3d DCA 1991) ("[I]n the absence of a finding of bad faith, an automobile insurance carrier's liability is restricted to the amount of its coverage limits." (internal quotation marks omitted) (first citing *Quinn v. Millard*, 358 So. 2d 1378 (Fla. 3d DCA 1978); then citing *Dixie Ins. v. Lewis*, 484 So. 2d 89 (Fla. 2d DCA 1986))). It is against the insurer, not the tortfeasor, that the judgment on review was entered, and the cause of action was based on the UM insurance policy; a first-party bad faith claim had not even yet accrued before the time of the judgment. "[T]he insured's underlying action for insurance benefits against the insurer must be first resolved in favor of the insured before the cause of action

for bad faith can accrue" because "if an uninsured motorist is not liable for damages, then the insurer has not acted in bad faith in refusing to settle the claim." *Fridman v. Safeco Ins. Co. of Illinois*, 185 So. 3d 1214, 1222 (Fla. 2016) (citing *Blanchard v. State Farm Mut. Auto. Ins.*, 575 So. 2d 1289, 1291 (Fla. 1991)) (explaining that "abatement is an appropriate procedural device" when "a bad faith action is joined with a claim for UM benefits" because "a bad faith claim is premature if it is brought before a determination of damages is obtained"). Entry of judgment against the insurer in the full amount of the jury's determination of the *tortfeasor's* liability to the insured when that liability exceeds the UM policy limits does not make sense in a UM action and contravenes applicable case law.

In support of his argument that the judgment on appeal was correctly entered in the full amount of the net jury verdict, Mr. Finson misconstrues the Florida Supreme Court's decision in *Fridman*, 185 So. 3d 1214. He finds support for his reading of *Fridman* by seizing upon language in *21st Century Centennial Insurance Co. v. Walker*, 254 So. 3d 978 (Fla. 4th DCA 2018), for the proposition that, when a jury renders a verdict in excess of the policy limits before a bad faith determination, trial courts must enter final judgment against the insurer for the full amount of the verdict but limit execution to the policy limits. Respectfully, it is this court's contention that the Fourth District's *21st Century* opinion mischaracterizes the holding of *Fridman*, inaccurately describing that *Fridman*

> established the appropriate protocol to follow if a plaintiff prevails in a UM action and then elects to pursue a bad faith claim . . . [and] held that any judgment entered should be for the full amount of the insured's damages, even though the insured must later proceed with a bad faith action to recover any amount in excess of the policy limits.

4

*Id.* at 981. To the contrary, *Fridman* did not hold, or even suggest, that judgment in a UM action should be entered for the full amount of the jury verdict in excess of the policy limits.

The supreme court in *Fridman* approved of the practice of "*including* the verdict amount" of the "full extent" of the insured's damages, "which may be in excess of the policy limits," *in* the final judgment of a UM case. *Fridman,* 185 So. 3d at 1230 (emphasis added). The Fourth District expanded the supreme court's holding to require that judgment be *entered in* the "full amount of the insured's damages." *21st Century,* 254 So. 3d at 981. This misrelation of the *Fridman* holding is belied by the language, rationale, and facts of the supreme court's opinion.

In *Fridman,* the supreme court addressed "two interrelated issues" regarding "first-party bad faith litigation"—"whether an insured is entitled to a determination of liability and the full extent of his or her damages in the UM case, before litigating the first-party bad faith claim" and "whether that determination of damages is then binding, as an element of damages, in a subsequent first-party bad faith cause of action." 185 So. 3d at 1219. Answering both questions in the affirmative, the supreme court further concluded that "there must be an opportunity for both parties to obtain appellate review of any timely raised claims of error in the determination of damages obtained in the UM trial, for the very reason that it becomes binding as an element of damages in the subsequent bad faith case." *Id.* at 1226.

Importantly for the purposes of resolving this case, throughout the *Fridman* opinion the Florida Supreme Court characterized the approved approach as including a *determination of* the amount of the jury verdict in the UM judgment, not entering *judgment in* that amount. *See id.* at

5

1230 ("We conclude that an insured is entitled to a jury *determination* of liability and the full extent of his or her damages, which may be in excess of the policy limits, in the underlying UM case, prior to litigating a first-party bad faith cause of action." (emphasis added)); *see also id.* at 1224 ("[W]e conclude that an insured is entitled to a *determination* of liability and the full extent of his or her damages in the UM case prior to filing a first-party bad faith action. . . ." (emphasis added)). It is this "verdict amount" that can be "includ[ed] . . . *in* the final judgment" as part of the approved "procedure" of "entering the amount of the jury verdict in the final judgment and retaining jurisdiction to consider an amendment of the pleadings to add the bad faith claim." *Id.* at 1219, 1230 (emphasis added) (explaining that this "approach . . . appropriately addresses how the parties can review that jury *determination* of the extent of the damages for error prior to it being used in the subsequent bad faith litigation as an element of damages" (emphasis added)). Nowhere in the *Fridman* opinion is it suggested that an insured is entitled to a *judgment in* that amount.

Conspicuously, the judgment approved by *Fridman* was *in the amount of the policy limits* and merely included the amount of the jury's verdict in a paragraph in which the trial court reserved jurisdiction to determine the plaintiff's right to amend his complaint "to seek and litigate bad faith damages from the Defendant as a result of such jury verdict in excess of policy limits." *Id.* at 1217–18. The judgment set forth that "the Plaintiff *will be* entitled to a judgment, in accordance with the jury's verdict" for the full amount of his damages over the policy limits only "*[i]f* the Plaintiff should ultimately prevail in his action for bad faith damages against Defendant." *Id.* at 1218 (emphasis added). Thus, neither the facts nor the rationale of the *Fridman* opinion can support

6

the proposition that the jury determination of the amount of an insured's liability in excess of the policy limits should be reduced to a judgment for that amount. The only fair reading of the *Fridman* opinion is an approval of the inclusion of a finding of the jury's determination of the insured's amount of damages in excess of the policy limits in a UM judgment—a reference to the amount, but not entry of judgment in that amount. *See id.* at 1229 ("[B]y including the amount of the jury verdict in the final judgment, the trial court did precisely what Judge Gross described in *Paton* as a 'preferable approach,' in which execution issues only for the policy limits but the total amount of the damages is *included in* the final judgment." (emphasis added) (citing *GEICO Gen. Ins. v. Paton*, 150 So. 3d 804, 808 n.1 (Fla. 4th DCA 2014))); *see also Paton*, 150 So. 3d at 805, 808 n.1 (noting a final judgment was limited to the $100,000 policy limits following a verdict for $469,247 in an uninsured motorist case but recommending that courts "include specific *findings* on the total amount of damages, even though execution would issue for only the policy limits" (emphasis added)). *Fridman* therefore supports neither Mr. Finson's position in this case nor the Fourth District's characterization of *Fridman* as holding "that any judgment entered should be for the full amount of the insured's damages." *See 21st Century*, 254 So. 3d at 981.

There is an additional reason this court should not follow the Fourth District's *21st Century* opinion—its characterization of the *Fridman* decision is dicta. *See Kiley v. State*, 273 So. 3d 193, 194 n.2 (Fla. 5th DCA 2019) (recognizing that a statement in a district court opinion "not essential to the decision in that case" was dicta "and without force as precedent" (citing *State ex rel. Biscayne Kennel Club v. Bd. of Bus. Regul.*, 276 So. 2d 823, 826 (Fla. 1973))). In *21st Century*, the insurer appealed an award of attorney's fees and costs in favor of the

insured based on proposals for settlement that were exceeded by more than 25% by a judgment that the trial court entered "for the full amount of the jury verdict, but limited execution to the $20,000 UM policy limits." 254 So. 3d at 979; *see also* § 768.79(6)(b), Fla. Stat. (2017) (conditioning an award of fees on the plaintiff obtaining a judgment at least 25% more than the amount of the unaccepted offer). The Fourth District reversed the award and remanded with instructions to consider "an award pursuant to section 768.79 at the end of the parties' bad faith litigation" because "the only enforceable judgment against the insurer at this time, or what is effectively the 'net judgment' as section 768.79(6)(b) describes, is for the amount representing the policy limits of $20,000 per accident." *21st Century*, 254 So. 3d at 981. The Fourth District's misinterpretation of the *Fridman* opinion as endorsing the practice of "entering final judgment in these cases for the full amount of the verdict" was not necessary to its holding, which hinged entirely upon what amount was executable at the time of entry of judgment in the UM case— an executable amount that would have been identical had the trial court followed the approach actually approved by the supreme court in *Fridman* and entered a judgment in an amount *within* the policy limits but that contained a finding of the jury's determination of the full amount of the insured's damages. In other words, whether the judgment amount had been within the policy limits or whether execution of a judgment amount in excess of the policy limits had been stayed, the admonition to "wait[] until a determination is made on whether the plaintiff proved bad faith claims against an insurer before determining entitlement to an award of attorney's fees and costs against an insurer under section 768.79" would be equally applicable based on the premise that "the only *enforceable* judgment against the insurer at [the] time [of

8

the UM judgment] . . . is for the amount representing the policy limits." *See id.* (emphasis added); *see also Parsons v. Culp*, 328 So. 3d 341, 354 (Fla. 2d DCA 2021) (Atkinson, J., concurring in part and dissenting in part) ("A statement in a judicial opinion that is 'unnecessary to the resolution of the issue before the court' constitutes dicta and is 'not controlling judicial precedent.' " (quoting *Cirelli v. Ent*, 885 So. 2d 423, 427 (Fla. 5th DCA 2004))).

Finally, the trial court's provision for the accrual of postjudgment interest on the net verdict amount is also error. Because "a successful claimant is theoretically entitled to receive the compensation on the date of entry of the judgment[,] . . . post-judgment interest serves to reimburse the claimant for not having received the money in hand on that day." *FIGA v. R.V.M.P. Corp.*, 874 F.2d 1528, 1533 (11th Cir. 1989). It is premature for postjudgment interest to accrue on the net verdict amount because Mr. Finson is not presently entitled to be paid that amount, and he may never be so entitled unless he brings and prevails in a bad faith claim.

Accordingly, we reverse the trial court's final judgment and remand for entry of a corrected judgment consistent with this opinion.

Reversed and remanded.

KELLY and KHOUZAM, JJ., Concur.

———————————————

Opinion subject to revision prior to official publication.